UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Estate of Joseph P. King, by and through its Administratrix, Amy King, and Amy King, in her own right, | CIVIL ACTION |
| Plaintiff, | INDEX NO. 9:20-cv-1413 |
| v. | |
| Anthony J. Annucci, Acting Commissioner, State of New York Department of Corrections, in his individual capacity; and Marie T. Sullivan, MD, Commissioner, State of New York Department of Mental Health, in her individual capacity Jami Palladino, Mid-State Social Worker, in her individual capacity; Hal Meyers, Mid-State Chief Mental Health Counselor, in his individual capacity; | **AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

**NOW COMES**, Plaintiffs, by and through the undersigned counsel, and hereby bring this Amended Complaint against Defendants as follows:

**INTRODUCTORY STATEMENT**

1.  This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law that deprived Joseph P. King, of his rights secured by the Constitution and laws of the United States of America.

2.  In particular on November 16, 2018, Defendants violated the rights of Joseph P. King by failing to keep him in a safe and secure environment where he could be kept free from injury, harm, and death, and by failing to provide him with adequate medical and mental health care and attention, in violation of the Eighth Amendment to the United States Constitution.

1

3. In addition, Plaintiffs bring this action against Defendants for the New York torts of negligence and wrongful death as well as violations of the New York Constitution (N.Y. Const. art I, §5) and the New York Civil Rights Act (N.Y. McKinney's CVR §1 et seq.).

## JURISDICTION AND VENUE

4. Plaintiffs' case arises under the Constitution and laws of the United States, specifically, the Eight Amendments to the United States Constitution. Plaintiffs' suit is authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense-awards).

5. This Court has jurisdiction over Plaintiffs' federal constitutional claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).

6. This case also arises under the common law and the statutory law of the State of New York.

7. This Court has pendant jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) in that the events and incident giving rise to the claims herein took place in the County of Oneida, State of New York (the domicile of Mid-State Correctional Facility) and within the jurisdiction of this honorable U.S. District Court.

## PARTIES

9. On December 14, 2018, the Oneida County Surrogate's Court duly appointed Amy King, the widow of decedent Joseph P. King the Administratrix of the Estate of Joseph P. King ("Decedent"). Plaintiff Amy King brings this action on behalf of her late husband's estate and in her own right.

10. At all times relevant, New York Mid-State Correctional Facility (hereinafter "Mid-State Correctional"), located at 9005 Old River Road, Marcy, NY 13403, housed Decedent.

11. Defendant Anthony J. Annucci ("Annucci") is the Acting Commissioner of the New York State Department of Corrections, headquartered at One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. Defendant Annucci is sued in his individual capacity.

12. Defendant Marie T. Sullivan, MD, ("Sullivan") is Commissioner of the New York State Department of Mental Health, headquartered at 44 Holland Avenue, Albany, NY 12229. Defendant Sullivan is sued in her individual capacity.

13. Defendant Jami Palladino ("Palladino"), was, at all times material hereto, Decedent's assigned social worker during his time of incarceration at Mid-State Correctional Facility. Defendant Jami Palladino is sued in her individual capacity.

14. Defendant Hal Meyers ("Meyers"), was, at all times material hereto, the Chief Mental Health Counselor at Mid-State Correctional Facility during Decedent's period of incarceration. Defendant Hal Myers, is sued in his individual capacity.

15. Defendants Annuci, Sullivan, Palladino, and Meyers are sometimes referred to collectively as "Defendants".

## FACTUAL ALLEGATIONS

16. Prior to November 16, 2018, Decedent was incarcerated at the Mid-State Correctional. Decedent's incarceration at Mid-State Correctional began on February 2, 2015, after he was transferred there from another New York Department of Corrections facility.

17. Upon information and belief, Decedent was transferred to Mid-State Correctional because Mid-State Correctional specializes in housing inmates with significant mental health

issues and Decedent had multiple known mental health illnesses, including severe depression and anxiety.

18. At all relevant times during Decedent's incarceration at Mid-State Correctional, Defendant Palladino was assigned as social worker to help manage Decedent mental health illnesses and issues.

19. At all relevant times during Decedent's incarceration at Mid-State Correctional, Decedent was under the supervision of Mid-State's Chief Mental Health Counselor, Defendant Hal Meyers.

20. At all times relevant, Defendants Palladino and Myers operated under Defendant Annuci and Defendant Sullivan's policies.

**Decedent Joseph King's Serious Medical Need**

21. At all relevant times, while incarcerated in the Mid-State Correctional, the Eighth Amendment to the United States Constitution protected the Decedent.

22. The Eighth Amendment requires that prisoners receive medical and psychological healthcare during their incarceration.

23. All employees of Mid-State Correctional are prison officials required to provide health care to prisoners in line with constitutional standards, especially when prisoners experience a "serious" medical need.

24. A medical need is "serious" if a physician diagnosed the condition as requiring treatment or is so obvious that a layperson would easily recognize the necessity for a doctor's attention.

25. Mental illnesses constitute "serious medical needs" when they require treatment, or are so obvious, a layperson would recognize the necessity for a doctor's treatment. A "severe" mental health condition is one that has caused significant disruption in a prisoner's everyday life

and prevents a prisoner from functioning in the general population without disturbing or endangering others or himself.

26. A mental health care system that meets the serious needs of prisoners must include a systematic program for screening, monitoring and evaluating prisoners in order to identify those who require more extensive mental health treatment.

27. Upon information and belief, Decedent had a long history of experiencing series medical needs while he was incarcerated at Mid-State Correctional, including previous suicide attempts.

**Decedent's History of Suicide Attempts**

28. On or around July 11, 2016, while incarcerated at Mid-State Correctional, Decedent reported to the 31 Building at approximately 8:30 am for his paint crew program, which was located on the first floor.

29. When he arrived, Decedent entered a stairwell and continued to the third floor instead of the first floor where he was supposed to report and when he reached the third floor, Decedent tied a black shoelace to a security screen and around his neck and attempted to hang himself.

30. The shoelace broke and Decedent injured his nose and forehead on the screen but survived. Unsuccessful at ending his life, Decedent reported to his program, completed his work module.

31. Upon information and belief, no one noticed the ligature marks on his neck.

32. Upon information and belief, Decedent then self reported this incident to a Corrections Officer who transported Decedent for medical evaluation and treatment.

33. Upon information and belief, Defendants Palladino and Meyers were well aware of Decedent's long-standing mental health issues and his July 2016 suicide attempt.

34. Upon information and belief, Decedent may have attempted suicide at least one other time prior to November 2018.

35. Upon information and belief, Decedent was proscribed mental health medications, including anti-depressants and anti-anxiety medications.

36. Decedent's depression continued to plague him from 2016 onward and he often received medical treatment for his depression and other mental health issues.

37. Upon information and belief, in the one or two weeks prior to November 16, 2018, Decedent was experiencing a severe medical need when his well-known, documented depression began increase.

38. Upon information and belief, in the one or two weeks prior to November 16, 2018, Defendants Palladino and Meyers determined that Decedent should stop being administered his prescribed anti-depressants and anti-anxiety medications, which he had theretofore been taking regularly.

39. It is well known in the psychiatric community that a mental health patient who has been regularly taking anti-depression, anti-anxiety medication is subject that to a heightened risk of suicide in the week or two following non-tapered discontinuation of that medication. As mental health care professionals, Defendants Palladino and Meyers should have been extra vigilant to closely monitor Decedent's physical and mental condition following the discontinuation of his anti-depression, anti-anxiety medication in the weeks leading up Decedent's November 16, 2018 suicide.

40. On November 16, 2018, Decedent was found deceased and "hanging" by the neck from his shoelaces in a communal bathroom in his cell block at Mid-State Correctional.

41. Upon information and belief, Decedent was last seen alive 15 minutes before he was found unresponsive on the floor with a shoelace wrapped around his neck and affixed to a conduit in a facility bathroom.

42. Upon information and belief, Mid-State Correctional under the direction of Defendant Annucci, failed to monitor Decedent, even though they were aware of Decedent's prior attempt to commit suicide, and also failed to restrict his access to shoe laces, and allowed him to wear shoelaces, despite his previous suicide attempt. In doing so, these defendants breached their legal duty to maintain a safe and suitable environment, and failed to keep Decedent safe from injury, harm and death, thus causing Decedent's death.

**Mid-State Correctional Operated With Deliberate Indifference to Decedent's Serious Medical Needs**

43. Inmates who are confined without adequate mental health treatment, medication, and/or therapy predictably face devastating results, including aggressive and violent behavior, deepening depression, and successful and unsuccessful attempts at suicide or the taking the lives of others.

44. Defendants are all aware of the Decedent's history of mental illness and his past suicide attempts.

45. Over the last several years, the suicide rate of inmates has received much media attention and has been the subject of federal governmental investigations.

46. Defendants knew, or should have known, that Decedent, and inmates like the Decedent, who had a history of mental illnesses and suicidal ideation were more likely to need mental health care and close monitoring.

47. Defendants knew, or should have known, that Decedent, and inmates like the Decedent, who had a history of mental illnesses and suicidal ideation, presented a substantial risk for continued suicidal tendencies.

48. Defendant Annunci and Defendant Sullivan are responsible for the conduct of the underlings performing the daily operation of Mid-State Correctional in that they set the policy for the operation of Mid-State Correctional and other New York State run prisons.

49. Defendant Annunci and Defendant Sullivan are policymakers and have allowed prison officials to operate despite the failure to institute and follow appropriate mental health monitoring procedures.

50. Defendants Palladino and Meyers are aware that ineffective policies of Mid-State Correctional are creating unconstitutional environments where inmates, like Decedent, are not receiving necessary care for serious medical needs. Therefore, Defendants Palladino and Meyers are complicit in the deliberate indifference to the serious medical needs of inmates.

51. In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Decedent of his rights, privileges, and immunities secured by the Eighth Amendments to the United States Constitution and 42 U.S.C. § 1983.

52. The above-described acts and omissions by Defendants demonstrated a deliberate indifference to and a conscious disregard for the psychological needs, prior suicidal history, and the overall safety of Decedent, of which they were aware, or should have been aware.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### FEDERAL CONSTITUTIONAL VIOLATIONS BY ALL DEFENDANTS

53. The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.

54. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

55. Plaintiffs in this action are citizens of the United States.

56. Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

57. At all relevant times, the Defendants were acting under the color of state law.

58. At the time of the complained of events, Decedent had the clearly established constitutional right to be free from cruel and unusual punishment.

59. The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

60. The Eighth Amendment to the United States Constitution requires that state actors take responsible measures to guarantee the safety and well-being of inmates in their custody.

61. Defendants, acting under the color of state law, have subjected Decedent to inadequate medical care causing substantial risk of serious physical and psychological harm, and as such, constitute unlawful punishment in violation of the Eighth Amendment.

62. Each of the Defendants was aware that Decedent suffered from serious mental illness and had previously attempted suicide in 2016.

63. Each of the Defendants was aware that prisoners such as Decedent were at extreme risk for further self-injurious behavior and needed specific monitoring and protection.

64. Defendants had a duty to properly screen, monitor and treat Decedent for any suicidal tendencies, or any other psychological problems.

65. Defendants' failure to utilize an appropriate mental illness screening, monitoring, and treatment plan constitutes a violation of Decedent's Eighth Amendment rights because Defendants denied and delayed treatment with deliberate indifference to Decedent's serious medical needs.

66. At all times relevant, Defendants acted under color of law to delay and deny Decedent proper medical care to treat his mental illness. Defendants knew or should have known that Decedent had mental illness. As a result, Defendants knew or should have known that denying and delaying a treatment was a substantial, if not excessive, risk to Decedent's health. Defendants consciously disregarded this risk in violation of Decedent's Eighth Amendment rights.

67. Defendants' failure to provide treatment for Decedent's mental illness and/or substance abuse or dependency was not predicated on legitimate differences in medical opinion, but on deliberate indifference and conscious disregard for Decedent's serious medical needs, which led to Decedent's death.

68. The actions of Defendants violated the late Decedent's rights under the Eighth Amendment to be incarcerated in a safe and suitable environment, and to be safe from injury, harm or death while incarcerated at the New York Mid-State Correctional Facility.

69. The violations of Decedent's rights under the United States Constitution was the fatal injury to Plaintiff's decedent, thereby entitling Plaintiff to compensatory damages from Defendants in an amount exceeding $1,000,000.

70. Plaintiffs are entitled to recover punitive damages against Defendants in their individual capacities, in an amount greater than $1,000,000.

71. Plaintiffs are entitled to recover reasonable attorney's fees and the costs and expenses of this action.

**WHEREFORE**, the Plaintiff, Amy King, on behalf of the Estate of Joseph P. King, and in her own right, demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**FEDERAL CONSTITUTIONAL VIOLATIONS BY DEFENDANTS ANNUNCI AND SULLIVAN – FAILURE TO TRAIN**

72. The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.

73. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

74. Plaintiffs in this action are citizens of the United States.

75. Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

76. At all relevant times, the Defendants Annunci and Sullivan were acting under the color of state law.

77. At the time of the complained of events, Decedent had the clearly established constitutional right to be free from cruel and unusual punishment.

78. The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

79. The Eighth Amendment to the United States Constitution requires that state actors take responsible measures to guarantee the safety and well-being of inmates in their custody.

80. Defendants Annunci and Sullivan and other policymakers, developed policies, procedures and/or customs, which caused the deprivation of Decedent constitutional rights.

81. Said policies were inherently deficient, or in fact appropriate as formulated, but were routinely ignored and violated by Corrections Officers and Jail Personnel with such frequency and reckless abandon that they did not fear discipline should they get caught.

82. Defendants Annuci and Sullivan other policymakers, negligently, recklessly, and/or intentionally:

   a. failed to properly train and Defendants Palladino and Meyers and supervise employees with regard to adequately assessing, monitoring and treating inmates with suicidal tendencies and other psychological problems;

   b. failed to properly train and supervise Defendants Palladino and Meyers or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury, harm or death;

   c. maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screene, monitored and treated for suicidal tendencies or other mental health problems; to be adequately monitored; and to be kept safe from injury, harm or death;

    d. with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

    e. failed to provide adequate and needed mental health care for inmates at the Mid-State Correctional.

83. The actions and/or failures to act by Defendants Annunci and Sullivan as illustrated above, amounted to a deliberate indifference of Decedent's constitutional rights and proximately caused his death.

84. The violation of Decedent's under the United States Constitution was the proximate cause of damages to Plaintiffs, thereby entitling Plaintiffs to compensatory damages in an amount in excess of $1,000,000.00.

**WHEREFORE**, the Plaintiff, Amy King, on behalf of the Estate of Joseph P. King and in her own right, demands judgment against the Defendant, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE NEW YORK STATE CONSTITUTION AND THE NEW YORK CIVIL RIGHTS ACT, N.Y. MCKINNEY'S CVR § 1 et seq.
### DEFENDANT JAMI PALLADINO, &
### DEFENDANT HAL MEYERS

85. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

86. Defendants Annunci and Sullivan failed to adequately train or otherwise have and maintain effective policies regarding heightened supervision of inmates who have had prior suicide attempts or exhibit or have been diagnosed with other psychological problems, to adequately monitoring all inmates, and to protect inmates form injury, harm or death.

87. Defendants Annunci and Sullivan were deliberately indifferent to the likelihood that Mid-State Correctional Facility staff, employees like Defendant Palladino and Defendant Hal Meyers would fail to adequately monitor inmates, especially under circumstances where psychotropic medication had been deliberately cut off, and would fail to protect inmates from injury, harm or death.

**WHEREFORE**, Plaintiff states a cause of action under the New York Constitution (N.Y. Const. art I, § 5) and the New York Civil Rights Act, (N.Y. McKinney's CVR §1 et seq.).

### FOURTH CLAIM FOR RELIEF
### NEGLIGENCE AGAINST ALL DEFENDANTS

88. The allegation set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

89. Defendant Annucci, as Acting Commissioner of the New York Department of Corrections, had a duty to ensure that New York State Correctional Facility Superintendents implemented Department policies, practices, regulations, and dictates to ensure that Correctional Facility staff, employees, and/or correctional officers were properly trained to screen inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates, especially those who were known to have made suicide attempts in the past, and to protect inmates from injury, harm or death.

90. Defendant Acting Commissioner Annucci failed to ensure that Mid-State Correctional Facility implemented Department policies, practices, regulations, and dictates to ensure that Mid-State Correctional Facility staff, employees, and/or correctional officers were properly trained to screen inmates for suicidal tendencies or other psychological problems, to adequately monitoring inmates, especially those who were known to have made suicide attempts in the past at Mid-State Correctional Facility, and to protect inmates from injury, harm or death.

91. Defendant Sullivan, as Commissioner of the New York Department of Mental Health, had a duty to ensure that Mental Health professionals deployed at New York State Correctional Facilities were properly trained and empowered to provide for the mental health needs of inmates, including making sound professional judgments about the administration of needed psychotropic medication to inmates, to screen inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates, especially those who were known to have made suicide attempts in the past, and to protect inmates from injury, harm or death.

92. Defendant Sullivan, failed to ensure that Mental Health professionals deployed at Mid-State Correctional Facilities were properly trained and empowered to provide for the mental health needs of inmates, including making sound professional judgments about the administration of needed psychotropic medication to inmates, to screen inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates, especially those who were known to have made suicide attempts in the past, and to protect inmates from injury, harm or death.

93. Defendants Palladino and Meyers had a duty to provide for the mental health needs of inmates at Mid-state Correctional Facility, including making sound professional judgments about the administration of needed psychotropic medication to inmates, to screen inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates, especially those who were known to have made suicide attempts in the past at Mid-State Correctional Facility, and to protect inmates from injury, harm or death.

94. Defendants Palladino and Meyers failed to provide for the mental health needs of inmates at Mid-State Correctional Facility, including failing to make sound professional judgments about the administration of needed psychotropic medication to inmates, to screen inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates,

especially those who were known to have made suicide attempts in the past at Mid-State Correctional Facility, and to protect inmates from injury, harm or death.

95.     As a direct and proximate result of Defendants' negligence, Joseph P. King, took his life while in the custody of Mid-State Correctional Facility on November 16, 2018.

96.     Plaintiffs are entitled to an award of compensatory damages against the Defendants in an amount which exceeds $1,000,000.

**WHEREFORE**, the Plaintiff, Amy King, on behalf of the Estate of Joseph P. King, and in her own right, demands judgment against the Defendants for damages, counsel fees and all costs of suit.

## FIFTH CLAIM FOR RELIEF
## WRONGFUL DEATH AGAINST ALL DEFENDANTS

97.     The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.

98.     Defendants owed a duty of reasonable care to Decedent, and to other inmates at the Mid-State Correctional Facility, to properly screen inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates, especially those who had made suicide attempts in the past, and to protect inmates from injury, harm or death.

99.     Defendants failed to use the requisite standard of care, subjecting Decedent, to the violation of his constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments.

100.    The Defendants' deliberate indifference to Decedent's rights caused the death of Joseph P. King.

101.    As a direct and proximate result of Defendants' negligence, gross negligence, recklessness and breach of other duties owed to the Plaintiff's decedent, Joseph P. King, the

beneficiaries of Joseph P. King have sustained pecuniary loss, economic damages and loss, mental anguish, emotional pain and suffering, pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of parental care, loss of advice, loss of counsel, loss of training, loss of guidance, loss of education and loss of filial care.

102. The Complaint in this matter has been timely filed pursuant to the applicable laws of the State of New York.

**WHEREFORE**, the Plaintiff, Amy King, as Administrator of the Estate of Joseph P. King, hereby demands judgment against Defendants for the wrongful death of Joseph P. King for economic and noneconomic damages, compensatory damages, plus costs, prejudgment interest, post-judgment interest and counsel fees.

## SIXTH CLAIM FOR RELIEF

## SURVIVAL ACTION - AGAINST ALL DEFENDANTS

103. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

104. Defendants owed the Plaintiff's decedent, Joseph P. King, a duty to use reasonable care in carrying out the lawful duties associated with, and required by the New York State Department of Corrections, The New York State Department of Mental Health, and the Mid-State Correctional Facility in Marcy, New York.

105. Defendants breached their duties when they failed to use reasonable care, were negligent, reckless, and grossly negligent, directly and proximately causing the death of the Plaintiff's decedent, Joseph P. King, on November 16, 2018.

106. As a direct and proximate result of said breaches of duties, as described above, Plaintiff's decedent, Joseph P. King, suffered fright and conscious pain and suffering during the time period that he was alive after "hanging" commenced.

107. As a direct and proximate results of the Defendants' breaches of duty, as described above, the Estate of Joseph P. King incurred funeral expenses and medical bills.

108. Plaintiff brings a survivor action pursuant to applicable law against the Defendants for the aforementioned expenses, conscious pain and suffering and fright suffered by decedent, Joseph P. King.

**WHEREFORE**, the Plaintiff, Amy King, as Administrator of the Estate of Joseph P. King, hereby demands judgment against the Defendants for the survival claims of the decedent for economic and noneconomic damages, compensatory damages, plus costs, prejudgment interest, and post judgment interest and counsel fees.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury.

Dated: June 21, 2021                    Respectfully submitted,

**Hach Rose Schirripa & Cheverie, LLP**

By: _/s/ Frank R. Schirripa_
Frank R. Schirripa, Bar Number: 519694
Hillary M. Nappi
112 Madison Avenue
New York, NY 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
fschirripa@hrsclaw.com

hnappi@hrsclaw.com

**Lento Law Group**
D. Scott Wiggins
*Admission Pending*

300 Atrium Way, Suite 200
Mt. Laurel, NJ 08054
Telephone: 856-652-2000
dswiggins@lentolawgroup.com

*Attorneys for the Plaintiffs*