UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

The Estate of Joseph P. King, by and through its
Administratrix, Amy King, and Amy King in her own right,

<em>Plaintiff</em>,

-against-

9:20-CV-1413
(TJM/ML)

Anthony J. Annucci, Acting Commissioner, State of New
York Department of Corrections, in his individual capacity;
and Marie T. Sullivan, Commissioner, State of New York
Department of Mental Health, in her individual capacity;
Jami Palladino, Mid-State Social Worker, in her individual
capacity; Hal Meyers, Mid-State Chief Mental Health Counselor,
in his individual capacity;

<em>Defendants</em>.

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE §56 (a)**

LETITIA JAMES
Attorney General of the State of New York
Syracuse Regional Office
Attorney for Defendants
300 S. State Street, Ste. 300
Syracuse, NY 13202

By:    Aimee Cowan, Esq.
       Assistant Attorney General, of Counsel
       Bar Roll No. 516178
       Telephone: (315) 448-4800
       Fax: (315) 448-4853
       E-mail: Aimee.Cowan@ag.ny.gov

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**………………………………………………..……… iii

**PRELIMINARY STATEMENT**………………………………………………...1

**STATEMENT OF FACTS**………………………………………………………1

**STANDARD OF REVIEW**………………………………………………...1

**ARGUMENT**………………………………………………………………......3

 **I.** **PLAINTIFF'S EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM MUST BE DISMISSED………………………………………..3**

 **II.** **PLAINTIFF'S EIGHTH AMENDMENT "FAILURE TO TRAIN" CLAIM MUST BE DISMISSED……………………………………………..20**

 **III.** **PLAINTIFF'S NEW YORK CONSTITUTION AND NEW YORK CIVIL RIGHTS ACT CLAIMS SHOULD BE DISMISSED………………………..22**

 **IV.** **PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED………25**

 **V.** **PLAINTIFF'S WRONGFUL DEATH CLAIM SHOULD BE DISMISSED……………………………………………………………31**

 **VI.** **PLAINTIFF'S SURVIVAL ACTION SHOULD BE DISMISSED…………33**

**CONCLUSION**………………………………………………….…………...35

## TABLE OF AUTHORITIES

**Cases**

Alfaro v. Wal–Mart Stores, Inc., 210 F.3d 111 (2d Cir.2000)…………………………………..32

Allah v. Kemp, No. 9:08-CV-1008 (NAM/GHL), 2010 WL 5860290 (N.D.N.Y. Nov. 9, 2010)….4

Allen v. Antal, 665 F. App'x 9 (2d Cir. 2016)……………………………………………….......23

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)……………………………………………2

Ashcroft v. al-Kidd, 563 U.S. 731 (2011)……………………………………………………...19

Ashcroft v. Iqbal, 556 U.S. 662 (2009)……………………………………………………...5, 24

Bing v. Annucci, 2022 WL 2229462 (S.D.N.Y. June 21, 2022)…………………………………21

Boley v. Durets, 687 F. App'x 40 (2d Cir. 2017)………………………………………………...5

Boyd v. Doe #1, No. 918CV1333TJMATB, 2021 WL 7542409 (N.D.N.Y. Nov. 30, 2021)..5, 6, 8

Britt v. Doe, No. 322CV0692GLSML, 2022 WL 16579207 (N.D.N.Y. Oct. 13, 2022)…………21

Brown v. Dep't of Corr., 2021 WL 124417 (D. Conn. Jan. 13, 2021)……………………………6

Brown v. State of New York, 89 N.Y.2d 172 (1996)……………………………………………..23

Burgos v. Alves, 418 F. Supp. 2d 263 (W.D.N.Y. 2006)…………………………………………18

Case v. Anderson, 2017 WL 3701863 (S.D.N.Y. 2017)……………………………………….......25

Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104 (2d Cir. 2017)………………………………………………………………………………………………2

Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998)…………………………………………...18

CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114 (2d Cir. 2013)…………..2

Cole v. New York State Dep't of Corr. & Cmty. Supervision, 2016 WL 5394752 (N.D.N.Y. 2016)…………………………………………………………………………………………..25

Cossette v. Downstate Corr. Facility, 2020 WL 8768086 (W.D.N.Y. Apr. 1, 2020)……………25

Cragg v. Allstate Indem. Corp., 926 N.Y.S.2d 867 (2011)………………………………………34

Cruz v. City of New Rochelle, 2017 WL 1402122 (S.D.N.Y. 2017)……………………………34

Cummins v. Cnty. of Onondaga, 618 N.Y.S.2d 615 (1994)…………………………………………34

Cuoco v. Moritsugu, 222 F.3d 99 (2d Cir. 2000)……………………………………………………4

Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30 (2d Cir. 2019)………………………………..2

DiStiso v. Cook, 691 F.3d 226 (2d Cir. 2012)…………………………………………………………..3

Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010)……………………………………………6

Est. of Leombruno by & through Douglas v. Cnty. of Greene, No. 919CV374TJMCFH, 2022 WL 467622 (N.D.N.Y. Jan. 25, 2022)………………………………………………………………...26

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012)…………………………………………………2

Farmer v. Brennan, 511 U.S. 825 (1994)………………………………………………………4, 6

Federal Trade Comm'n v. Moses, 913 F.3d 297 (2d Cir. 2019)………………………………………3

Fontaine v. Cornwall, No. 9:15-CV-432 (DNH), 2019 WL 4257136 (N.D.N.Y. Sept. 9, 2019)…………………………………………………………………………...3, 4, 15, 16, 23

Gabriel v. Cnty. of Herkimer, 889 F. Supp. 2d 374 (N.D.N.Y. 2012)………………………31, 32

Gazzola v. Cnty. of Nassau, 2022 WL 2274710 (E.D.N.Y. 2022)……………………………31, 33

Gonzalez v. City of Schenectady, 728 F.3d 149 (2d Cir. 2013)…………………………………..19

Gonzalez v. New York City Housing Auth., 572 N.E.2d 598 (1991)……………………………33

Gordon v. City of New York, 2005 WL 2899863 (2d Cir. 2005)……………………………..…..23

Gordon v. New York, 70 N.Y.2d 839 (1987)……………………………………………..……26

Grubbs v. Ngbodi, 2022 WL 4072926 (S.D.N.Y. Sept. 2, 2022)………………………………..19

Guzman v. McCarthy, 21-CV-1192, 2022 WL 630873 (N.D.N.Y. Mar. 4, 2022)…………..…..21

Hall v. NYS Dep't of Corr. & Cmty. Supervision, No. 9:12-CV-0377 GTS/DEP, 2015 WL 901010 (N.D.N.Y. Mar. 3, 2015)………………………………………………………………32

Hamilton v. Smith, 2009 WL 3199531 (N.D.N.Y. 2009)………………………………………....3

Harrell v. New York State Dep't of Corr. & Cmty. Supervision, 2019 WL 3821229 (S.D.N.Y. Aug. 14, 2019)……………………………………………………………………………25, 26, 27

Hathaway v. Coughlin, 99 F.3d 550 (2d Cir. 1996)…………………………………………………….3

Haywood v. Annucci, 2020 WL 5751530 (S.D.N.Y. Sept. 25, 2020)……………………………….7

Hershey v. Goldstein, 938 F.Supp.2d 491 (S.D.N.Y. 2013)……………………………………...23

Hill v. Curcione, 657 F.3d 116 (2d Cir. 2011)……………………………………………………3, 4

H'Shaka v. O'Gorman, 444 F. Supp. 3d 355 (N.D.N.Y. 2020)……………………………………7

ING Bank N.V. v. M/V TEMARA, IMO No. 9333929, 892 F.3d 511 (2d Cir. 2018)……………1

Jackson v. Annucci, 2021 WL 2581340 (S.D.N.Y. June 23, 2021)……………………….………7

Kevra v. Vladagin, 96 A.D.3d 805 (2d Dep't 2012)……………………………………………34

Lyons v. Lancer Ins. Co., 681 F.3d 50 (2d Cir. 2012)……………………………………………2

Maldonado v. City of New York,  2014 WL 787814 (S.D.N.Y. 2014)…………………………...23

Marcus v. Annucci, 2022 WL 280935 (S.D.N.Y. Jan. 31, 2022)…………………………………7

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)……………………2

Mayo v. Cnty. of Albany, 357 F. App'x 339 (2d Cir. 2009)……………………………………27

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007)…………………………….1

McLean v. Ferguson, No. 920CV1115TJMTWD, 2021 WL 6750544 (N.D.N.Y. Nov. 5, 2021)……………………………………………………………………………………...26

Mena v. City of New York, 2019 WL 1900334 (S.D.N.Y. 2019)………………………………23

Miner v. Clinton County, N.Y., 541 F.3d 464 (2d Cir. 2008)……………………………………..2

Parker v. Miller, 199 F.3d 1323 (2d Cir. 1999)………………………………………………...32

Peoples v. Fischer,  2011 WL 6034374 (S.D.N.Y. 2011)………………………………………24

Pooler v. Nassau Univ. Med. Ctr., 848 F. Supp. 2d 332 (E.D.N.Y. 2012)………………………18

Powell v. City of Jamestown, 2022 WL 1913581 (W.D.N.Y. June 3, 2022)…………………….21

Quinn v. United States, 946 F. Supp. 2d 267 (N.D.N.Y. 2013)…………………………………...34

Randolph v. Kalies, No. 919CV1161DNHTWD, 2021 WL 5605557 (N.D.N.Y. Nov. 10, 2021)……………………………………………………………………………3, 4, 5, 17, 18

Ricci v. DeStefano, 557 U.S. 557 (2009)…………………………………………………………2

Robinson v. Graham, No. 9:20-cv-1610 (MAD/ML), 2021 WL 2358415 (N.D.N.Y. June 9, 2021)……………………………………………………………………………………..21

Robinson v. Taylor, 2019 WL 1429529 (N.D.N.Y.2019)…………………………………17, 18

Rodriguez v. Bradey, 2022 WL 4484072 (D. Conn. Sept. 27, 2022)……………………………21

Ryan v. County of Nassau, 2016 WL 11500151 (E.D.N.Y. 2016)………………………………31

Salahuddin v. Goord, 467 F.3d 263 (2d Cir. 2006)…………………………………………….4

Sanchez v. State of New York, 784 N.E.2d 675 (2002)…………………………………….26, 27

Santiago v. Pressley, 2011 WL 6748386 (S.D.N.Y. 2011)………………………………………24

Scott v. Harris, 550 U.S. 372 (2007)……………………………………………………………2

Sims v. Gorman, 2012 WL 566875 (W.D.N.Y. 2012)………………………………………....5, 18

Singleton v. City of Newburgh, 1 F. Supp. 2d 306 (S.D.N.Y. 1998)……………………………33

Smalls v. Cty. of Suffolk, 2019 WL 4038742 (E.D.N.Y. 2019)…………………………………1

Smith v. Fischer, 500 Fed.Appx. 59 (2d Cir.2012)…………………………………………….3

Sonberg v. Niagara Cty. Jail, 2012 WL 5617539 (W.D.N.Y. 2012)……………………………18

Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303 (S.D.N.Y. 2001)……….18

Suarez v. Annucci, 2021 WL 6065765 (S.D.N.Y. Dec. 21, 2021)………………………………..8

Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020)……………………………5, 6, 7, 8, 20, 21

Tarrant v. City of Mount Vernon, 2022 WL 17070062 (S.D.N.Y. Nov. 17, 2022)….……………5

Terebesi v. Torreso, 764 F.3d 217 (2d Cir. 2014)………………………………………………...19

Ward v. LeClaire, 2008 WL 3851831 (W.D.N.Y. 2008)………………………………………22, 24

Williams v. Annucci, No. 920CV1417BKSTWD, 2021 WL 4775970 (N.D.N.Y. Oct. 13, 2021)………………………………………………………………………………………………..21

Wright v. Rao, 622 F App'x 46 (2d Cir. 2015)………………………………………………4, 16

Young v. Choinski, 15 F. Supp. 3d 194 (D. Conn. 2014)………………………………………3

Ziglar v. Abbasi, 137 S. Ct. 1843 (2017)……………………………………………………....19

**Statutes**

42 U.S.C. §1983……………………………………………………………………………….3, 23

Fed. R. Civ. P. 56(a)………………………………………………………………………….1, 34

New York Constitution, Article I, §5………………………………………………….. 22

New York Civil Rights Act, §1, et seq………………………………………………………22, 23

N.Y. CORR. LAW § 24.2…………………………………………………………………23, 25

N.Y. Est. Powers & Trusts § 1–2.5………………………………………………………………32

## PRELIMINARY STATEMENT

In her Amended Complaint, Plaintiff claims Defendants failed to provide her deceased husband, Joseph King, with adequate medical and mental health care and attention in violation of the Eighth Amendment to the United States Constitution, which led to his suicide while he was incarcerated at Mid-State Correctional Facility ("Mid-State"). (See gen., ECF No. 50). Plaintiff alleges Defendants Anthony Annucci and Ann Marie Sullivan failed to properly train and supervise their employees and violated the New York State Constitution and New York State Civil Rights law. (Id.). Additionally, Plaintiff alleges state law negligence and wrongful death claims against all Defendants. (Id.).

With discovery now completed, Defendants respectfully request that this Court grant their motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) and dismiss Plaintiff's Amended Complaint ("AC") in its entirety, with prejudice.

## STATEMENT OF FACTS

See, accompanying Statement of Material Facts not in Dispute, Declaration of Attorney Aimee Cowan, and the Declarations of Defendants Anthony J. Annucci, Ann Marie Sullivan, Harold Meyers and Jami Palladino for a recitation of the relevant facts.

## STANDARD OF REVIEW

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Smalls v. Cty. of Suffolk, 2019 WL 4038742, at *7–8 (E.D.N.Y. 2019)(citing ING Bank N.V. v. M/V TEMARA, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018)). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." Id., citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted).

1

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009)(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted). "[W]hen the moving party has carried its burden[,] ... its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [,]" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec., 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008).

The nonmoving party can only defeat summary judgment by "adduc[ing] evidence on which the jury could reasonably find for that party." Lyons v. Lancer Ins. Co., 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)), and "[a] court cannot credit a plaintiff's merely

speculative or conclusory assertions." <u>DiStiso v. Cook,</u> 691 F.3d 226, 230 (2d Cir. 2012); <u>see also</u> <u>Federal Trade Comm'n v. Moses</u>, 913 F.3d 297, 305 (2d Cir. 2019).

<u>**ARGUMENT**</u>

I.   **PLAINTIFF'S EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM MUST BE DISMISSED**

Plaintiff's First Claim in her AC alleges that pursuant to 42 U.S.C. §1983, all Defendants subjected the decedent to inadequate medical care, "causing substantial risk of serious physical and psychological harm…." in violation of the Eighth Amendment. (ECF No. 50 at 9).

There are both objective and subjective requirements to succeed on an Eighth Amendment claim regarding serious mental health needs. <u>Young v. Choinski</u>, 15 F. Supp. 3d 194, 198 (D. Conn. 2014). First, the danger posed by the deliberate indifference must be "sufficiently serious" from an objective perspective; and second, "the defendant must have acted with deliberate indifference to that need (*i.e., subjectively* failed to address the danger)." <u>Id.</u>, citing <u>Smith v. Fischer</u>, 500 Fed.Appx. 59, 61 (2d Cir.2012).

The objective component "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." <u>Randolph v. Kalies</u>, No. 919CV1161DNHTWD, 2021 WL 5605557, at *6 (N.D.N.Y. Nov. 10, 2021), <u>report and recommendation adopted,</u> No. 9:19-CV-1161, 2021 WL 5596409 (N.D.N.Y. Nov. 30, 2021)(citing <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011) (quoting <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Courts have found that '[t]reatment of mental disorders of mentally disturbed inmates is ... a serious medical need....' " <u>Id.</u>, citing <u>Fontaine v. Cornwall</u>, No. 9:15-CV-432 (DNH), 2019 WL 4257136, at *4 (N.D.N.Y. Sept. 9, 2019) (alternations in original) (quoting <u>Hamilton v. Smith,</u> 2009 WL 3199531, at *14 (N.D.N.Y. 2009)).

3

With respect to the subjective component, in the context of medical indifference claims, the <u>mens</u> <u>rea</u> prong requires the plaintiff plausibly to allege "the official acted with deliberate indifference to inmate health." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 280 (2d Cir. 2006). The plaintiff must therefore establish that "[s]ubjectively, the official charged with deliberate indifference must act with a 'sufficiently culpable state of mind.' " <u>Fontaine</u>, 2019 WL at *5 (citing <u>Hill</u>, 657 F.3d at 122). In other words, the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id</u>., citing <u>Hill</u>, 657 F.3d at 122 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

As a result, "[m]ere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act ... that evinces a conscious disregard of a substantial risk of serious harm." <u>Id</u>., citing <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 107 (2d Cir. 2000) (internal citations and quotation marks omitted). Significantly, disagreement about a caregiver's choice of treatment is *not* evidence of deliberate indifference. <u>Wright v. Rao</u>, 622 F App'x 46, 47 (2d Cir. 2015) (summary order).

"In an inmate suicide context, there are two scenarios where deliberate indifference may exist." <u>Randolph</u>, 2021 WL at *6, citing <u>Allah v. Kemp,</u> No. 9:08-CV-1008 (NAM/GHL), 2010 WL 5860290, at *7 (N.D.N.Y. Nov. 9, 2010). "First, officials could be deliberately indifferent to the risk of suicide by failing to discover an individual's suicidal tendencies." <u>Id</u>. (quotation marks and citation omitted). "Second, officials could have discovered and have been aware of the suicidal tendencies, but could be deliberately indifferent in the manner by which they respond to the recognized risk of suicide." <u>Id</u>. (quotation marks and citation omitted).

"The second scenario focuses on the adequacy of preventive measures." Id. (quotation marks and citation omitted). However, even if a medical defendant's "treatment decision was erroneous, deliberate indifference cannot be inferred [where] the decision was not such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Sims v. Gorman, 2012 WL 566875, at *6 (W.D.N.Y. 2012) (quotation marks and citation omitted).

### a. Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Annucci should be dismissed

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." Tarrant v. City of Mount Vernon, 2022 WL 17070062, at *4 (S.D.N.Y. Nov. 17, 2022)(citing Boley v. Durets, 687 F. App'x 40, 41 (2d Cir. 2017)). The Second Circuit recently clarified the standard for personal involvement of individuals in a § 1983 action. Boyd v. Doe #1, No. 918CV1333TJMATB, 2021 WL 7542409, at *15 (N.D.N.Y. Nov. 30, 2021), report and recommendation adopted, No. 918CV1333TJMATB, 2022 WL 823648 (N.D.N.Y. Mar. 18, 2022)(citing Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020)). Pursuant to the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), "the Second Circuit in Tangreti made clear that in order to attach liability to an individual, regardless of supervisory status, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Id., citing Iqbal, 556 U.S. at 676.

"The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. Id. The violation must be established against the supervisory official directly. Id. (quoting Iqbal, 556 U.S. at 676). Quoting a Tenth Circuit case, the Tangreti court stated that " 'after *Iqbal,* [a p]laintiff can

no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges.' " Id. (alterations in original) (quoting Dodds v. Richardson, 614 F.3d 1185, 1204 (10th Cir. 2010)) (internal quotation marks omitted) (emphasis added, other citations omitted). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. Id. Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. Id.

Here, pursuant to the standard set forth in Tangreti, Plaintiff must establish that Defendant Annucci, the Acting Commissioner of DOCCS, violated the Eighth Amendment by his own conduct, not by reason of his supervision of others who allegedly committed the violation.[1] See, Brown v. Dep't of Corr., 2021 WL 124417, at *16 (D. Conn. Jan. 13, 2021). In fact, specifically with respect to Plaintiff's Eighth Amendment claim, Plaintiff must show that Defendant Annucci "acted with deliberate indifference." See, Id. Consequently, "for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had *subjective knowledge* of a substantial risk of serious harm to an inmate and disregarded it." Id., citing Farmer, 511 U.S. at 837.

Consequently, Plaintiff must show that Annucci knew of and disregarded an excessive risk to decedent's health or safety; that he was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he drew that inference. See, Boyd, 2021 WL at *16. Plaintiff has not and cannot demonstrate that Defendant Annucci acted with

---

[1] It should be noted that Plaintiff has *never* identified any DOCCS employee(s) specifically who allegedly violated the decedent's constitutional rights. See gen., ECF No. 50; Attorney Aimee Cowan Declaration, Exhibit D.

deliberate indifference. Indeed, Annucci never spoke to the decedent at any time prior to his death; never received any correspondence from the decedent while he was in DOCCS' custody; and never received and/or reviewed his medical records or mental health records. (See, Declaration of Anthony J, Annucci, at ⁋ 9). Further, Annucci did not personally provide the decedent with any medical or mental health treatment and was not personally involved in any decisions related to decedent's mental health care. (Id. at ⁋ 10).

Given that Plaintiff cannot show that Annucci was personally involved under Tangreti, this claim should be dismissed. See, H'Shaka v. O'Gorman, 444 F. Supp. 3d 355, 377 (N.D.N.Y. 2020)(eighth amendment claim dismissed where lack of factual allegations and admissible record evidence that any of the DOCCS Defendants were personally involved in decisions related to the level of mental health care that plaintiff received); see also, Haywood v. Annucci, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020) ("Plaintiff offer[ed] no factual allegations suggesting that Annucci was present for, knew of, or even had any reason to know about the alleged" constitutional violation); Marcus v. Annucci, 2022 WL 280935, at *5 (S.D.N.Y. Jan. 31, 2022)(Plaintiff failed to plead that these Defendants through their "own individual actions ... violated the Constitution."); Jackson v. Annucci, 2021 WL 2581340, at *5 (S.D.N.Y. June 23, 2021).

### b. Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Sullivan should be dismissed

Similarly, Plaintiff must also show that Defendant Sullivan, the Commissioner of the New York State Office of Mental Health ("OMH"), was personally involved under the Tangreti guidelines. Plaintiff has not and cannot demonstrate that Defendant Sullivan acted with deliberate indifference. Plaintiff must show that Sullivan knew of and disregarded an excessive risk to

decedent's health or safety; that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that she drew that inference.

As stated in her Declaration, Sullivan is not involved in the day-to-day operations of the Mid-State Correctional Facility CNYPC Satellite Unit or any other Satellite Unit. (Declaration of Anne Marie Sullivan [Sullivan Dec.], ⁋ 9).  Furthermore, she never spoke to the decedent at any time prior to his death; she never received any correspondence from him while he was in DOCCS' custody; and she never received and/or reviewed his medical records or mental health records. (Id. at ⁋ 10). As the Commissioner, she did not personally provide the decedent with any medical or mental health treatment. (Id. at ⁋ 11).

Given that Plaintiff cannot show that Sullivan was personally involved under Tangreti, this claim should be dismissed. See, Suarez v. Annucci, 2021 WL 6065765 at *7  (S.D.N.Y. Dec. 21, 2021)(deliberate indifference claim dismissed where although plaintiff alleges Sullivan was responsible for OMH's provision of services to mentally ill incarcerated people, the amended complaint contains no allegation that she personally knew about plaintiff, his mental illness, or his incarceration in segregated confinement); see also, Boyd, supra, at *16.

### c. Plaintiff's Eighth Amendment claim against Defendant Meyers should be dismissed

Defendant Harold Meyers is a licensed master social worker employed by OMH. (Cowan Dec., Ex. K at 16-17, 19). Meyers was the Unit Chief at Mid-State Correctional Facility in 2018 and he served as Defendant Palladino's supervisor. (Id. at 17; Id., Ex. L at 10). As the Unit Chief at Mid-State, Meyers must be held to the same personal involvement standards Tangreti as Annucci and Sullivan. Plaintiff has not and cannot demonstrate that Defendant Meyers acted with deliberate indifference. Plaintiff must show that Meyers knew of and disregarded an excessive risk

to decedent's health or safety; that he was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he drew that inference.

As the Unit Chief, Meyers' duties included overseeing the day-to-day operations of Mid-State from an administrative vantage point. (Id., Ex. K at 18). However, Meyers' duties did *not* include clinical determinations. (Id. at 24). He was responsible for supervising approximately twenty-eight (28) OMH employees, some of whom managed a caseload of incarcerated individuals who were receiving mental health services. (Declaration of Harold Meyers [Meyers Dec.], at ¶7). At times, there were over 800 incarcerated individuals active on the mental health caseload. (Cowan Dec., Ex. K at 23). Meyers did not meet individually with the decedent, other than on one occasion with the decedent's therapist, Jami Palladino, in a supervisory capacity only. (Id. at 23-24; Meyers Dec. at ¶9). Meyers did not provide direct therapy to the decedent. (Cowan Dec., Ex. K at 26). Further, because Meyers is not a medical doctor, his duties did not include patient medication management, such as whether to prescribe a patient medication, what medication to prescribe them or when to discontinue a medication.  (Meyers Dec. at ¶8).

Meyers never received any letters or correspondence from the decedent. (Id. at ¶10). Significantly, Meyers was not required to monitor any incarcerated individual's telephone calls and he did not monitor or review any phone calls the decedent placed or received. (Id. at ¶11). Consequently, he was not aware that the decedent believed his marriage was suffering, particularly in the days leading up to his death. (Id.). He was not aware of anything the decedent discussed with his family members on the telephone in the days leading up to his death. (Id.).

Given that Plaintiff cannot demonstrate that Meyers was personally aware of and disregarded his mental health needs, this claim should be dismissed.

### d.  Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Palladino should be dismissed

Mid-State is operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Cowan Dec., Ex. M at 36). Mental health services are provided to incarcerated individuals on-site at Mid-State by Central New York Psychiatric Center ("CNYPC") staff. (Id.). Defendant Jami Palladino is a licensed clinical social worker employed by OMH. (Id., Ex. L at 9). In 2018, Palladino was employed as a general population therapist at Mid-State Correctional Facility and managed a caseload of approximately 150-180 incarcerated individuals who received mental health services. (Id. at 10, 31).

The policy at Mid-State is that an incarcerated individual open to mental health services will be seen by the therapist at a minimum once every thirty days. (Id. at 28; Id., Ex. K at 41). In an emergency situation, an incarcerated individual could be seen more than once a month. (Id., Ex. L at 58). Incarcerated individuals at Mid-State are required to visit their prescriber/psychiatrist at a minimum every three months. (Id., Ex. K at 41; Id., Ex. M at 37). There is flexibility left for additional in-between sessions left to clinical judgment. (Id., Ex. M at 14, 37).

If an incarcerated individual wrote a letter asking to be seen sooner than once every thirty days, the inmate would be seen within two weeks of receipt of the letter. (Id., Ex. L at 28-29). If an inmate expressed thoughts of self harm or psychotic symptoms, the inmate would be brought to the crisis unit immediately. (Id. at 57). Palladino testified at her deposition that if an inmate indicated to her that he was having thoughts of self harm or made threats of self-harm, Palladino would report to administration and the inmate would be placed in a crisis unit. (Id. at 47).

A suicide risk evaluation is completed for inmates within two weeks of transferring into Mid-State. (Id. at 50). Every two years the suicide risk assessment is updated, or it is updated as indicated, such as when a new risk factor arose. (Id.). A verbal suicide risk assessment is performed on a patient at every session and the risk assessment is updated accordingly. (Id. at 51-52).

Palladino began giving therapy to the decedent in 2013 and met with him once a month to provide supportive counseling and verbal therapy. (Id. at 14-15). After his suicide attempt in July 2016, decedent told Palladino that he would never attempt suicide again. (Id. at 28). In the six months leading up to his death, decedent received extensive and adequate mental health treatment at Mid-State. (See gen., Id., Ex. B). In fact, decedent was evaluated by his prescribers more often than the required minimum of once every three months.[2]

On May 14, 2018, decedent was evaluated by a psychiatric provider, Karen Thomas, M.D. (Id., at bates stamp 000892-000893). At that time, decedent was diagnosed with adjustment disorder with mixed anxiety and depressed mood. (Id.). A suicide assessment was performed at that session and decedent denied suicidal ideation. (Id.) At that time, Dr. Thomas prescribed Celexa for his depression and Vistaril for his anxiety. (Id. at 000893).

Decedent also received therapy from his primary therapist, Jami Palladino, on May 14, 2018. (Id. at 001058-001059). During their session, decedent denied psychotic symptoms or wanting to harm himself. (Id. at 001058). Palladino determined there were no evidence of any warning signs of acute suicide risk. (Id. at 001059).

On June 25, 2018, decedent was evaluated by his psychiatric provider, Dr. Thomas. (Id., at 000894-000895). Her progress note indicates that decedent received a misbehavior ticket for taking suboxone. (Id. at 000894). Suboxone was not prescribed to decedent. (Id., Ex. J at 49). Decedent admitted to Dr. Thomas that he used suboxone a few times since the last session on May 14, 2018. (Id., Ex. B at 000894). A suicide assessment was performed, and no warning signs were present. (Id.). Dr. Thomas discussed decedent's suboxone use with him. (Id. at 000895). Dr.

---

[2] Please note that Plaintiff did not name any of decedent's prescribers as a defendant in this matter.

11

Thomas decided to taper off and discontinue the Celexa and Vistaril because decedent did not find the medications to be effective. (Id.).

Decedent was also received therapy from Palladino on this date, June 25, 2018. (Id. at 001061-001062). Decedent denied experiencing thoughts of self harm or psychotic symptoms. (Id. at 001061). He acknowledged that he had been using suboxone recently and had received disciplinary tickets for drug use. (Id.). Palladino asked decedent if the passing of his mother the month before was a trigger for thoughts of suicide or harming himself, and he responded, "No way, I'll never do that again." (Id.). Palladino's progress note echoes Dr. Thomas' note, which indicates that decedent will taper the use of his medications and would be seen in one month by the prescriber to follow up on how he was doing and whether mediation was clinically indicated. (Id.). Palladino determined there were no evidence of any warning signs of acute suicide risk. (Id. at 001062).

On July 23, 2018, decedent was evaluated by Dr. Thomas. (Id., at 000896-000897). Decedent reported he felt more depressed but denied suicidal ideation. (Id.). A suicide risk assessment was performed, and no warning signs were present. (Id.). Decedent was prescribed Zoloft and Trazodone for his depression and anxiety. (Id. at 000897). Decedent was also given therapy from Palladino on July 23, 2018. (Id. at 001063-00164). Palladino determined there were no evidence of any warning signs of acute suicide risk. (Id. at 001064).

On August 27, 2018, decedent was evaluated by Dr. Thomas. (Id. at 000898-000899). Decedent admitted to using suboxone 2-3 times since the last visit. (Id.). He denied suicidal ideation and no suicidal warning signs were present. (Id.). Dr. Thomas counseled decedent on the harms of substance use. (Id. at 000899). Decedent indicated to Dr. Thomas that he understood that

medications would be stopped if the drug use continued. (Id.). Decedent continued his Zoloft and Trazodone prescription. (Id.).

Decedent was also given therapy from Palladino on August 27, 2018. (Id. at 001065-00166). Decedent denied experiencing any psychotic symptoms or wanting to harm himself. (Id. at 001065). Palladino relayed to decedent that his medication may be discontinued by his prescriber if he continued to use substances because they cannot effectively treat him if he is also using other substances at the same time. (Id.). Palladino determined there were no evidence of any warning signs of acute suicide risk. (Id. at 001066). On September 27, 2018, Decedent was given therapy from Palladino. (Id. at 001067-00168). Palladino determined there were no evidence of any warning signs of acute suicide risk. (Id. at 001068).

On October 16, 2018, decedent was evaluated by psychiatric nurse practitioner Carrie Citrin. (Id. at 000900-000901). A suicide risk assessment revealed no acute risk of suicide. (Id.). The provider discussed with decedent the expectation that he participates in treatment. (Id. at 000901). A trial morning dose of Prozac was prescribed to decedent. (Id.). However, the provider noted that it "appears at this time [patient's] primary dysfunction is his continued substance abuse." (Id.). Decedent was prescribed Prozac for the morning and trazodone for the evening. (Id.). A follow-up for 45 days was scheduled, "or otherwise clinically indicated." (Id.). Decedent was directed to be placed into group therapy to assist with skill building. (Id.).

On October 27, 2018, and October 31, 2018, decedent refused his prescribed medication. (Id. at 001070, 001071). Two weeks before his death, on November 2, 2018, Decedent was given therapy from Palladino. (Id. at 001073-00174). Palladino noted that decedent had been refusing medication, stating that the medication "made him feel weird."  (Id. at 001073). Decedent continued to deny thoughts of self harm, stating "I'll never do THAT again." (Id.). Decedent shared

that he had been going to church, attending AA (Alcoholics Anonymous) meetings, and going to the recreation yard. (Id.). Decedent shared that he continued to maintain contact with his wife, his children, and his sister, who were all supportive of him. (Id.). He shared that he had been working as a porter and was waiting to return to his ASAT (Alcohol and Substance Abuse) program. (Id.).

Palladino noted: "There is no evidence of any warning signs of acute suicide risk in patient's behavior or affect. There were no signs of anger, anxiety, withdrawal, mood change, purposelessness, hopelessness, recklessness or feelings of being trapped. Patient's risk for suicide will be assessed on an ongoing basis. Patient denied suicidal ideation or thoughts." (Id. at 001074). Decedent did not express any potential suicide indicators to her. (Id., Ex. L at 43-44).

Palladino was not aware of any increase in decedent's anxiety or depression leading up to his suicide. (Id. at 45). She encouraged decedent to use alternative coping skills in addition to medication in order to help him cope with prison. (Id. at 24). The alternative coping mechanisms included deep breathing, grounding techniques, and worksheets. (Id.). Up until her last session with decedent, Palladino tried to provide alternative coping therapy to him. (Id. at 25).

On November 5, 2018, decedent refused his prescribed medication. (Id., Ex. B at 001072). On November 6, 2018, decedent's prescriber discontinued his Prozac and Trazadone prescription. (Id. at 001097). Palladino is not a medical doctor, so her duties did not include patient medication management, such as whether to prescribe a patient medication, what medication to prescribe them or when to discontinue a medication.  (Declaration of Jami Palladino [Palladino Dec.] at ¶ 19). Consequently, she had no control over what medications decedent was prescribed or whether they would be discontinued. (Id.).

Further, Palladino was not required to monitor any incarcerated individual's telephone calls and she did not monitor or review any phone calls Mr. King placed or received. (Id. at ⁋ 20). Consequently, she was not aware that the decedent believed his marriage was suffering, particularly in the days leading up to his death. (Id.). She was not aware of anything he discussed with his family members on the telephone in the days leading up to his death. (Id.).

Significantly, decedent never discussed any concerns about his marriage with Palladino during their therapy sessions. (Id.). He never discussed with Palladino any fears that his wife was romantically involved with another man or that he feared she would divorce him. (Id.). She was not aware of any increase in decedent's anxiety or depression leading up to his suicide and she did not have any concerns about decedent in the weeks leading up to his death. (Id. at ⁋ 21). Given that Palladino had a therapy session with decedent on November 2, 2018, per CNYPC policy, she was not required to have another therapy session with him until December 2, 2018, unless he presented with an emergency.

Interestingly, Plaintiff testified that she has no allegations specifically against Defendant Palladino with respect to the mental health treatment decedent was provided. (Id., Ex. J at 68). Plaintiff testified that she did not believe Defendant Palladino played any role in decedent's death. (Id. at 69). Palladino herself asserts that there was nothing she could have done differently to prevent decedent's suicide and she could not have reasonably foreseen his death. (Id., Ex. L at 56; Palladino Dec., at ⁋ 21).

In Fontaine, supra, an inmate attempted suicide and brought suit against a physician, a licensed social worker and a nurse practitioner alleging, *inter alia*, they were deliberately indifferent to his medical needs by failing to properly treat his suicidal ideations. Fontaine, 2019 WL at *5. With respect to the physician, the Court held that plaintiff did not establish deliberate

indifference. The Court noted that the physician was aware of plaintiff's prior suicide attempt at the time he treated him, but the attempt had occurred nearly eleven years prior to the events giving rise to this claim. Further, the doctor examined plaintiff specifically to gauge his likelihood of suicidal tendencies, and found no evidence of "psychosis, suicidal or homicidal ideas, intent, or plan." Moreover, he treated plaintiff by prescribing him Celexa, an additional antidepressant. Consequently, because he did, in fact, treat plaintiff, these arguments amounted only to disagreement with his chosen care, and did not rise to the level of deliberate indifference. See, Wright, 622 F. App'x at 47. Further, the doctor expressed a legitimate reason to delay seeing plaintiff again, namely, giving time for his adjustments to plaintiff's medications to take effect. This time lapse alone did not amount to a knowing disregard of a risk to plaintiff's medical needs, especially when in the doctor's opinion he presented a low risk of suicide.

With respect to the social worker in Fontaine, the Court noted that the documentary evidence showed she thought that plaintiff showed no signs of suicidality at the time of their second meeting and plaintiff provided no evidence to dispute that his lack of any suicidal intent or plan beyond death wishes led her to the conclusion that he was not a suicide risk. "On the contrary, after two examinations of plaintiff, with recurring examinations scheduled, she determined that plaintiff was largely seeking attention, and made the express inference that plaintiff presented no risk of suicidality and presented no evidence of an increase in that risk…Moreover, the last time that she saw plaintiff before April 13, 2013, plaintiff expressly told her that he "wouldn't kill himself." Id. at *6. Consequently, the Court found that plaintiff was unable to establish the social worker's subjective awareness that plaintiff was an active suicide risk and his deliberate indifference claim against her was dismissed.

Here, Palladino's actions are similar to those of the social worker in <u>Fontaine</u>. Like the social worker in <u>Fontaine</u>, Palladino testified that she thought decedent showed no signs of suicidality during her sessions with him. Decedent expressly told Palladino that he would "never do that again," referring to his suicide attempt two years prior.

Further, Decedent consistently denied thoughts of self harm or psychotic symptoms, particularly in the six months preceding his death. Palladino testified that she did not have any concerns about decedent in the weeks leading up to his death and was not aware of any increase in decedent's anxiety or depression leading up to his suicide. She had no ability to prescribe or modify his medications. The record also clearly reflects that Palladino was unaware of any marital issues decedent was having; issues that were apparent in decedent's final phone call to his wife mere hours before he committed suicide. However, none of his family members brought this issue to anyone's attention at Mid-State, including Palladino.

Plaintiff has not and cannot demonstrate that Defendant Palladino acted with deliberate indifference. Plaintiff must show that Palladino knew of and disregarded an excessive risk to decedent's health or safety; that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that she drew that inference. It is clear from the record that Palladino did *not* know of and disregard an excessive risk to decedent's health or safety.

Significantly, Courts have held that "[t]he fact that Plaintiff attempted suicide after medical professionals had examined him and found him not to be a risk of harm to himself does not itself establish deliberate indifference." <u>Randolph</u>, 2021 WL at *10, citing <u>Robinson v. Taylor</u>, 2019 WL 1429529, *7 (N.D.N.Y.2019)(finding no deliberate indifference where medical professionals released the plaintiff from the OBS unit who attempted suicide because mere fact that defendants

"might have ultimately been wrong in [their] professional judgment does not support a showing of deliberate indifference"); see also, Sonberg v. Niagara Cty. Jail, 2012 WL 5617539, at *9 (W.D.N.Y. 2012)); Pooler v. Nassau Univ. Med. Ctr., 848 F. Supp. 2d 332, 349-50 (E.D.N.Y. 2012) (noting that therapist without ability to prescribe medication did not act with deliberate indifference for failing to take action where plaintiff informed therapist that he wanted to commit suicide but had no plans to do so).

Where a plaintiff takes issue with medical attention and treatment, prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. Randolph, 2021 WL  at *8–9 (citing Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citations omitted). "A plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim." Id. "As such, disagreements over medications, forms of treatment, the need for specialists, and the timing of medical intervention implicate medical judgment and do not rise to the level of a constitutional violation." Id., citing Sonds, 151 F. Supp. 2d at 312; see also, Sims, 2012 WL at *5 (finding no deliberate indifference despite an eventual suicide attempt by the plaintiff because "the decisions made by mental health professionals 'are issues within a professional medical judgment' which does not form a basis for an Eighth Amendment claim").

A plaintiff's subjective belief that "more" should have been done is insufficient to establish deliberate indifference. Id., citing Burgos v. Alves, 418 F. Supp. 2d 263, 265 (W.D.N.Y. 2006). As discussed, a "mere disagreement over the proper treatment does not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 700 (2d Cir. 1998). See also, Robinson, 2019 WL 1429529, at *7 (finding no deliberate indifference for failure to properly monitor inmate who

attempted suicide because mere fact that defendants "might have ultimately been wrong in [their] professional judgment does not support a showing of deliberate indifference").

Consequently, if the Court were to even assume that Palladino might have been ultimately wrong in her professional judgment regarding decedent's suicidal plans, it still does not support a showing of deliberate indifference. Plaintiff's subjective belief that "more" should have been done for decedent with respect to his mental health treatment is insufficient to establish deliberate indifference against Palladino. For the reasons stated above, the deliberate indifference claim against Palladino must be dismissed. Plaintiff offers no expert opinion to the contrary.

### e. Defendants are entitled to qualified immunity

In the event that the Court declines to dismiss Plaintiff's Eighth Amendment claims, Defendants are entitled to qualified immunity. The doctrine of qualified immunity gives "officials 'breathing room to make reasonable but mistaken judgments about open legal questions.' " Grubbs v. Ngbodi, 2022 WL 4072926, at *10 (S.D.N.Y. Sept. 2, 2022)(citing Ziglar v. Abbasi, 137 S. Ct. 1843, 1866 (2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." Terebesi v. Torreso, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted).

To determine whether a right was clearly established, courts look to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) whether it was "objectively reasonable" for the defendant to believe the conduct at issue was lawful. Id. at 231; Gonzalez v. City of Schenectady, 728 F.3d 149, 161 (2d Cir. 2013).

Here, Plaintiff cannot show that any of the Defendants violated a statutory or constitutional right that was clearly established. Further, it was objectively reasonable for defendants to believe their conduct was lawful. Specifically with respect to Palladino, she gave decedent therapy approximately once a month, as mandated by CNYPC policy. As discussed above, Palladino testified that she thought decedent showed no signs of suicidality during her sessions with him. Decedent expressly told Palladino that he would "never do that again," referring to his suicide attempt two years prior.

Decedent consistently denied thoughts of self harm or psychotic symptoms, particularly in the six months preceding his death. Palladino testified that she did not have any concerns about decedent in the weeks leading up to his death and was not aware of any increase in decedent's anxiety or depression leading up to his suicide. She had no ability to prescribe or modify his medications. The record also clearly reflects that Palladino was unaware of any marital issues decedent was having; issues that were apparent in decedent's final phone call to his wife mere hours before he committed suicide. However, none of his family members brought this issue to anyone's attention at Mid-State. Consequently, defendants are entitled to qualified immunity.

## II.     PLAINTIFF'S EIGHTH AMENDMENT "FAILURE TO TRAIN" CLAIM MUST BE DISMISSED

Plaintiff's Second Claim alleges that pursuant to Section 1983, Defendants Annucci and Sullivan failed to properly train and supervise their employees, and they failed to properly train and supervise Defendants Palladino and Meyers specifically. (ECF No. 50 at 11). However, as discussed above, Plaintiff must allege that Defendants Annucci and Sullivan were personally involved in the alleged violation under the new standard set forth in Tangreti.

Recently applying the Tangreti ruling, this district has specifically held that where plaintiff alleges a supervisory defendant failed to adequately train and supervise their employees, it is not

enough to plausibly allege personal involvement. See, Britt v. Doe, No. 322CV0692GLSML, 2022 WL 16579207, at *8 (N.D.N.Y. Oct. 13, 2022), report and recommendation adopted sub nom. Britt v. Doe, No. 322CV0692GLSML, 2022 WL 16571391 (N.D.N.Y. Nov. 1, 2022)(plaintiff's allegations that defendant failed to adequately train, enforce training, or supervise his officers on how to properly resolve domestic dispute incidents are insufficient to suggest personal involvement); Powell v. City of Jamestown, 2022 WL 1913581, at *10 (W.D.N.Y. June 3, 2022) (citing Guzman v. McCarthy, 21-CV-1192, 2022 WL 630873, at *3 (N.D.N.Y. Mar. 4, 2022)(mere allegation that prison superintendent failed to train his officers to protect inmates from harm was "not enough to plausibly allege the [superintendent's] personal involvement"); Rodriguez v. Bradey, 2022 WL 4484072, at *6 (D. Conn. Sept. 27, 2022)(Absent evidence of their personal involvement in the underlying claims a failure to train or supervise does not state a cognizable claim for supervisory liability).

See also, Robinson v. Graham, No. 9:20-cv-1610 (MAD/ML), 2021 WL 2358415, at *3 (N.D.N.Y. June 9, 2021) (dismissing claim against supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims that is no longer available" after Tangreti); Bing v. Annucci, 2022 WL 2229462, at *1–2 (S.D.N.Y. June 21, 2022)(Although Plaintiff states that Annucci failed to train and supervise his staff generally, he does not allege any facts indicating Annucci's specific involvement); Williams v. Annucci, No. 920CV1417BKSTWD, 2021 WL 4775970, at *5 (N.D.N.Y. Oct. 13, 2021)(allegations regarding Annucci's policymaking authority and general awareness of unconstitutional practices are insufficient to adequately plead his subjective knowledge as to Plaintiff's situation specifically).

Here, Plaintiff's AC falls short of establishing Defendants Annucci and Sullivan's personal involvement in any alleged constitutional violations. Merely alleging that they failed to properly train or supervise their employees and referring to their policy-making authority is simply insufficient under Tangreti, and these claims must be dismissed.

## III.   PLAINTIFF'S NEW YORK STATE CONSTITUTION AND NEW YORK CIVIL RIGHTS ACT CLAIMS SHOULD BE DISMISSED

The Third Cause of Action in Plaintiff's AC alleges that Defendants Annucci and Sullivan are liable under the New York Constitution, Article I, §5 and the New York Civil Rights Act, §1, et seq. for failing to "adequately train or otherwise have and maintain effective policies regarding heightened supervision of inmates who have had prior suicide attempts…."[3] (ECF No. 50, at 13-14).

### A. Plaintiff's New York State Constitution, Article 1, Section 5 claim should be dismissed

Article 1, section 5 of the New York State Constitution states: "Excessive bail shall not be required nor excessive fines imposed, nor shall cruel and unusual punishments be inflicted, nor shall witnesses be unreasonably detained." N.Y. Const. art. I, § 5. In her AC, Plaintiff fails to demonstrate how this provision is relevant to this matter or how it is applicable to this case. (See gen., ECF No. 50 at 13-14). Plaintiff further fails to elaborate on the basis for this claim in her responses to Defendants' First Set of Interrogatories. (Cowan Dec., Ex. D at 6).

With respect to Defendant Annucci, "[i]t is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." Ward v. LeClaire, 2008 WL 3851831, at *5 (W.D.N.Y. 2008)(dismissing New York State constitutional claims and New York

---

[3] Please note that the heading for this cause of action names Defendants Palladino and Meyers, but the allegations in the paragraphs following only list Defendants Annucci and Sullivan as liable under these statutes.

State Civil Rights Act claims against correction employees). Indeed, "New York law prevents an inmate from suing, in either federal or state court, a correctional employee in her individual capacity[.]" Fontaine, 2019 WL at *8 (citing Gordon v. City of New York, 2005 WL 2899863, at *1 (2d Cir. 2005)). Instead, plaintiffs can only bring these claims in New York's Court of Claims. Id., citing N.Y. CORR. LAW § 24.2. Consequently, any state law constitutional claim against DOCCS employee Annucci must be dismissed.

Regardless, even if Plaintiff's claims were sufficiently pled, the New York State constitution only provides a private right of action where remedies are otherwise unavailable at common law or under § 1983. Allen v. Antal, 665 F. App'x 9, 13 (2d Cir. 2016)(citing Brown v. State of New York, 89 N.Y.2d 172, 192 (1996)(recognizing "narrow remedy" for a constitutional tort claim brought under the State Constitution where a plaintiff otherwise has no available remedy).

Indeed, the Second Circuit has held that where alternative remedies are available under § 1983 and common law, state constitutional claims must be dismissed. Allen, 665 F. App'x at 13. See also, Maldonado v. City of New York, 2014 WL 787814, at *12 (S.D.N.Y. 2014)([T]here is no private right of action under the New York State Constitution for claims that are remediable under Section 1983 or other state laws." ); Mena v. City of New York, 2019 WL 1900334, at *5 (S.D.N.Y. 2019)("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution" where a plaintiff has available remedies under 42 U.S.C. § 1983)(citing Hershey v. Goldstein, 938 F.Supp.2d 491, 520 (S.D.N.Y. 2013)).

Here, with respect to the allegations in Plaintiff's Complaint, there *are* remedies available at common law or under § 1983—and Plaintiff has indeed sought such alternative remedies by bringing state law claims for wrongful death and § 1983 claims under the Eighth Amendment.

(See gen., ECF No. 50). Thus, no private right of action under the New York State Constitution exists in this case and Plaintiff's New York State constitutional claims must be dismissed.

**B. Plaintiff's New York Civil Rights Act (Law) claims should be dismissed**

Plaintiff also alleges under her Third Cause of Action that Defendants Annucci and Sullivan violated decedent's rights under the New York Civil Rights Act. Plaintiff fails to specify which section of the act was allegedly violated, instead alleging in conclusory fashion that she has stated a cause of action under New York Civil Rights Act §1, et. seq.

As stated above, "[i]t is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." Ward, 2008 WL at *5. Consequently, any state civil rights claim against Defendant Annucci must be dismissed.

Regardless, a claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. Plaintiff's vague, conclusory allegations of wrongdoing under the New York Civil Rights law cannot survive a motion to dismiss. See, Santiago v. Pressley, 2011 WL 6748386, at *6 (S.D.N.Y. 2011)(claim under the New York State civil rights law fails to satisfy the plausibility standard of Iqbal because plaintiff has offered nothing in support of those claims but conclusory allegations of wrongdoing that cannot be the basis of a complaint surviving a motion to dismiss); see gen., Peoples v. Fischer, 2011 WL 6034374 (S.D.N.Y. 2011) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.")

Plaintiff has offered nothing in support of her Civil Rights law claim and in fact, fails to even allege which provision of the law has been violated. For these reasons, her claims should be dismissed.

## IV.    PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED

Plaintiff alleges under her Fourth Claim that as a result of Defendants' negligence, the decedent took his own life. Under New York law, "[t]o establish a prima facie case of negligence, a plaintiff must establish the existence of a duty owed by a defendant to the plaintiff, a breach of that duty, and that such breach was a proximate cause of injury to the plaintiff." Harrell v. New York State Dep't of Corr. & Cmty. Supervision, 2019 WL 3821229, at *20 (S.D.N.Y. 2019)(citing Case v. Anderson, 2017 WL 3701863, at *20 (S.D.N.Y. 2017)).

### A.  Plaintiff's negligence claim against Annucci should be dismissed

This Court lacks subject matter jurisdiction with respect to the negligence claim against Defendant Annucci. By statute, New York vests state employees, including correctional employees, with immunity from suits for damages arising from conduct performed within the scope of their employment. See, Cole v. New York State Dep't of Corr. & Cmty. Supervision, 2016 WL 5394752, at *32 (N.D.N.Y. 2016), report and recommendation adopted, 2016 WL 5374125 (N.D.N.Y. 2016)(citing N.Y. Corr. Law § 24); see also, Cossette v. Downstate Corr. Facility, 2020 WL 8768086, at *6 (W.D.N.Y. Apr. 1, 2020)("To the extent Plaintiff alleges that the denial of medical care also raises claims of negligence or medical malpractice under state common law…those claims must be dismissed under New York Correction Law, § 24, because this Court lacks subject matter jurisdiction to entertain them.").

Plaintiff's AC alleges that Annucci failed to ensure, *inter alia*, that Mid-State implemented DOCCS policies with respect to suicidal inmates. (ECF No. 50 at 14). Nowhere does Plaintiff allege that Annucci's alleged conduct arose outside the scope of his employment. Consequently,

insofar as Plaintiff asserts a state law negligence claim against Annucci, that claim should be dismissed pursuant to Corrections Law Section 24. See also, McLean v. Ferguson, No. 920CV1115TJMTWD, 2021 WL 6750544, at *7 (N.D.N.Y. Nov. 5, 2021), report and recommendation adopted, No. 920CV1115TJMTWD, 2022 WL 252162 (N.D.N.Y. Jan. 27, 2022).

Even if Correction Law 24 did not bar such a claim, assuming Annucci possessed a duty to decedent, it was limited "to risks of harm that [we]re reasonably foreseeable." Harrell, 2019 WL at *20 (citing Sanchez v. State of New York, 784 N.E.2d 675, 678 (2002)). Although "a duty of care is owed by prison authorities with respect to the health and safety of their charges…the State's duty to prisoners does not mandate unremitting surveillance in all circumstances, and does not render the State an insurer of inmate safety." Case, 2017 WL at *24 (internal citations omitted)(citing Sanchez v. State of New York, 99 N.Y.2d 247, 256 (2002)). "[T]he scope of the State's duty to protect inmates is limited," as in all negligence actions, "to risks of harm that are reasonably foreseeable." Id., citing Sanchez at 253.

"When prison authorities know or should know a prisoner has suicidal tendencies or that a prisoner might physically harm himself, a duty arises to provide reasonable care to assure that such harm does not occur." Est. of Leombruno by & through Douglas v. Cnty. of Greene, No. 919CV374TJMCFH, 2022 WL 467622, at *16 (N.D.N.Y. Jan. 25, 2022)(citing Gordon v. New York, 70 N.Y.2d 839, 840 (1987)) "Whether a breach of duty has occurred depends upon whether the resulting harm was a reasonably foreseeable consequence of the defendant's acts or admission." Id., citing Gordon, at 841. If the defendant could not have "reasonably foreseen" the injury, "or if defendant's conduct was reasonable in light of what could have been anticipated, there is no breach of duty, no negligence, and no liability." Id.

Here, it was not reasonably foreseeable to Defendant Annucci that decedent would take his life. See, e.g., Mayo v. Cnty. of Albany, 357 F. App'x 339, 342 (2d Cir. 2009). As mentioned above, Annucci never spoke to the decedent at any time prior to his death; never received any correspondence from the decedent while he was in DOCCS' custody; and never received and/or reviewed his medical records or mental health records. (Annucci Dec., ⸿ 9). Further, Annucci did not personally provide the decedent with any medical or mental health treatment and was not personally involved in any decisions related to decedent's mental health care. (Id. at ⸿ 10). Plaintiff offers no expert opinion to the contrary.

### B.  Plaintiff's negligence claim against Sullivan should be dismissed

Again, assuming Commissioner Sullivan possessed a duty to the decedent, it was limited "to risks of harm that [we]re reasonably foreseeable." Harrell, 2019 WL at *20 (citing Sanchez, 784 N.E.2d at 678). Sullivan is not involved in the day-to-day operations of the Mid-State Correctional Facility CNYPC Satellite Unit or any other Satellite Unit. (Sullivan Dec., ⸿ 9). Furthermore, she never spoke to the decedent at any time prior to his death; she never received any correspondence from him while he was in DOCCS' custody; and she never received and/or reviewed his medical records or mental health records. (Id. at ⸿ 10). As the Commissioner, she did not personally provide the decedent with any medical or mental health treatment. (Id. at ⸿ 11).

Consequently, it was not reasonably foreseeable to Defendant Sullivan that decedent would take his life. Plaintiff offers no expert opinion to the contrary.

### C.  Plaintiff's negligence claim against Meyers should be dismissed

As discussed above under Point I(c), Meyers' duties as the Unit Chief included overseeing the day-to-day operations of Mid-State from an administrative vantage point. (Id., Ex. K at 18). However, Meyers' duties did not include clinical determinations. (Id. at 24). He was responsible for supervising approximately twenty-eight (28) OMH employees, some of whom managed a

caseload of incarcerated individuals who were receiving mental health services. (Meyers Dec., at ⁋7). At times, there were over 800 people active on the mental health caseload. (Cowan Dec., Ex. K at 23). Meyers did not meet individually with the decedent, other than on one occasion with the decedent's therapist, Jami Palladino, in a supervisory capacity only. (Id. at 23-24; Meyers Dec. at ⁋9). Meyers also did not provide direct therapy to the decedent. (Cowan Dec., Ex. K at 26). Further, because Meyers is not a medical doctor, his duties did not include patient medication management, such as whether to prescribe a patient medication, what medication to prescribe them or when to discontinue a medication.  (Meyers Dec. at ⁋8).

Meyers never received any letters or correspondence from the decedent. (Id. at ⁋10). Significantly, Meyers was not required to monitor any incarcerated individual's telephone calls and he did not monitor or review any phone calls the decedent placed or received. (Id. at ⁋11). Consequently, he was not aware that the decedent believed his marriage was suffering, particularly in the days leading up to his death. He was not aware of anything the decedent discussed with his family members on the telephone in the days leading up to his death. (Id.).

Consequently, it was not reasonably foreseeable to Defendant Meyers that decedent would take his life. Plaintiff offers no expert opinion to the contrary.

### D.  Plaintiff's negligence claim against Palladino should be dismissed

Point I(d) details the mental health care treatment decedent received in the six months prior to his death. He specifically received therapy from Palladino on a monthly basis, as required under the policy. After his suicide attempt in July 2016, decedent told Palladino that he would never attempt suicide again. During each session in the six months leading up to his death, decedent denied psychotic symptoms or wanting to harm himself. Palladino performed a suicide risk assessment at every session, and at each session, she determined there were no evidence of any warning signs of acute suicide risk.

28

Palladino did update decedent's suicide risk assessment when decedent's elderly mother passed away in May 2018, but when asked if the passing of his mother was a trigger for thoughts of suicide or harming himself, and he responded, "No way, I'll never do that again." At the same time, decedent was evaluated by a prescriber five times in the six months leading up to his death—more often than required by CNYPC policy. The prescriber monitored his medications, changing them when he indicated they were not working, when he refused to take them, and when he took unprescribed drugs.

Two weeks before his death, on November 2, 2018, Decedent was given therapy from Palladino. Palladino noted that decedent had been refusing medication, stating that the medication "made him feel weird." Decedent continued to deny thoughts of self harm, stating "I'll never do THAT again." Decedent shared that he had been going to church, attending AA (Alcoholics Anonymous) meetings, and going to the yard. Decedent shared that he continued to maintain contact with his wife, his children, and his sister, who were all supportive of him. He shared that he had been working as a porter and was waiting to return to his ASAT (Alcohol and Substance Abuse) program.

Palladino noted: "There is no evidence of any warning signs of acute suicide risk in patient's behavior or affect. There were no signs of anger, anxiety, withdrawal, mood change, purposelessness, hopelessness, recklessness or feelings of being trapped. Patient's risk for suicide will be assessed on an ongoing basis. Patient denied suicidal ideation or thoughts." Decedent did not express any potential suicide indicators to her.

Palladino was not aware of any increase in decedent's anxiety or depression leading up to his suicide. She encouraged decedent to use alternative coping skills in addition to medication in order to help him cope with prison. The alternative coping mechanisms included deep breathing,

grounding techniques, and worksheets. Up until her last session with decedent, Palladino tried to provide alternative coping therapy to him.

Palladino is not a medical doctor, so her duties did not include patient medication management, such as whether to prescribe a patient medication, what medication to prescribe them or when to discontinue a medication. Consequently, she had no control over what medications decedent was prescribed or whether they would be discontinued.

Further, Palladino was not required to monitor any incarcerated individual's telephone calls and she did not monitor or review any phone calls decedent placed or received. Consequently, she was not aware that the decedent believed his marriage was suffering, particularly in the days leading up to his death. She was not aware of anything he discussed with his family members on the telephone in the days leading up to his death. Significantly, decedent never discussed any concerns about his marriage with Palladino during their therapy sessions. He never discussed with Palladino any fears that his wife was romantically involved with another man or that he feared she would divorce him. She was not aware of any increase in decedent's anxiety or depression leading up to his suicide and she did not have any concerns about decedent in the weeks leading up to his death.

Given that Palladino had a therapy session with decedent on November 2, 2018, per CNYPC policy, she was not required to have another therapy session with him until December 2, 2018, unless he presented with an emergency. Interestingly, Plaintiff testified that she has no allegations specifically against Defendant Palladino with respect to the mental health treatment decedent was provided. Plaintiff testified that she did not believe Defendant Palladino played any role in decedent's death. Palladino herself avers that there was nothing she could have done differently to prevent decedent's suicide and she could not have reasonably foreseen his death.

In sum, Decedent consistently denied thoughts of self harm or psychotic symptoms, particularly in the six months preceding his death. Palladino testified that she did not have any concerns about decedent in the weeks leading up to his death and was not aware of any increase in decedent's anxiety or depression leading up to his suicide. She had no ability to prescribe or modify his medications. The record also clearly reflects that Palladino was unaware of any marital issues decedent was having; issues that were apparent in decedent's final phone call to his wife the night before he committed suicide. However, none of his family members brought this issue to anyone's attention at Mid-State, including Palladino. It is clear from the record that Palladino could not have "reasonably foreseen" decedent's suicide. Plaintiff offers no expert opinion to the contrary.

## V.     PLAINTIFF'S WRONGFUL DEATH CLAIM SHOULD BE DISMISSED

To prevail on a claim for wrongful death under New York law, a plaintiff must establish the following elements: '(1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent, and (4) the appointment of a personal representative of the decedent.' " Gazzola v. Cnty. of Nassau, 2022 WL 2274710, at *14 (E.D.N.Y. 2022)(citing Ryan v. County of Nassau, 2016 WL 11500151, at *8 (E.D.N.Y. 2016) (quotations omitted); see also Gabriel v. Cnty. of Herkimer, 889 F. Supp. 2d 374, 405–06 (N.D.N.Y. 2012).

Here, Defendants concede that Plaintiff can establish the first and fourth factors; decedent was a human being who died, and Plaintiff was appointed to represent his estate. However, Plaintiff has not and cannot demonstrate the second or third factor listed above.

### A.  This Court is without jurisdiction over Annucci

As an initial matter, and as discussed above, New York vests state employees,

including correctional employees, with immunity from suits for damages arising from conduct performed within the scope of their employment. Indeed, under New York State Corrections Law § 24, tort claims against prison officials can only be brought in the Court of Claims for the State of New York. Parker v. Miller, 199 F.3d 1323 (2d Cir. 1999)(dismissing state law wrongful death claim against corrections officials); Hall v. NYS Dep't of Corr. & Cmty. Supervision, No. 9:12-CV-0377 GTS/DEP, 2015 WL 901010, at *10 (N.D.N.Y. Mar. 3, 2015). Plaintiff has failed to advance any claim that Annucci acted beyond the scope of his authority; consequently, this Court is without jurisdiction over Annucci with respect to Plaintiff's wrongful death claim.

### B.  Plaintiff's wrongful death claim against Defendants should be dismissed

Regardless, with respect to the second element, "the wrongful act, neglect or default of the defendant by which the decedent's death was caused," the complaint appears to allege negligence. (ECF No. 50 at 16-17). As already discussed above under Point IV, supra, to establish ordinary negligence under state law, a plaintiff must prove three elements: " '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.' " Gabriel, 889 F. Supp. 2d at 405–06 (citing Alfaro v. Wal–Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir.2000)).

For the reasons cited under Point IV above, Defendants did not breach any duty towards decedent because it was not reasonably foreseeable to Defendants that decedent would take his life.

With respect to the third element in a state law wrongful death action, "[a] distributee is a person entitled to take or share in the property of a decedent under the statutes governing descent and distribution." N.Y. Est. Powers & Trusts § 1–2.5. Pecuniary loss includes medical and funeral expenses of the decedent paid by the distributee. Id. at § 5–4.1. "[T]o defeat a motion for summary

judgment in a wrongful death case, the plaintiff must offer proof of pecuniary loss," such as loss of support, voluntary assistance, or inheritance. Gazzola, 2022 WL at *14 (citing Singleton v. City of Newburgh, 1 F. Supp. 2d 306, 317 (S.D.N.Y. 1998); see also, Gonzalez v. New York City Housing Auth., 572 N.E.2d 598 (1991)).

Here, although Plaintiff testified that she paid a portion of the funeral expenses (Id., Ex. J at 92-94), she has not submitted any evidence of funeral expenses, medical expenses, or any other pecuniary losses. To the contrary, in response to Defendants' discovery demands Plaintiff never listed or provided evidence of any special damages whatsoever. (Cowan Dec., Ex. G at 6, 7; Id., Ex. I at 4, 5). In fact, Plaintiff averred that she is *not* claiming lost wages on behalf of decedent. (Id., Ex. I at 5). Plaintiff testified that she has no out of pocket expenses other than the alleged funeral expenses. (Id., Ex. J at 92-94),

Further, Plaintiff has not provided any evidence of a loss of inheritance, support or voluntary assistance. (Id., at 100; Id., Ex. O at 24). Plaintiff testified that she does not know the value of decedent's estate. (Id., Ex. J at 100).  At the time of his death, decedent had been incarcerated since approximately 2012 and his release date was uncertain. (Id. at 47). He provided no financial support to his family from prison. (Id., Ex. O at 24). Plaintiff presents no expert report detailing any pecuniary losses sustained by any distributees.

For the reasons stated above, Plaintiff's wrongful death claims should be dismissed.

### VI.   PLAINTIFF'S SURVIVAL ACTION SHOULD BE DISMISSED

Plaintiff's Sixth Claim contends that decedent's estate is entitled to funeral bills and medical expenses due to the pain and suffering decedent sustained during the time period he was alive after the "hanging commenced." (ECF No. 50 at 17-18). In contrast to a claim for wrongful death, which "belongs to the decedent's distributees and is designed to compensate the distributees themselves for their pecuniary losses as a result of the wrongful act," a claim for conscious pain

and suffering may only be brought by "the estate of the deceased, rather than the distributees." <u>Quinn v. United States</u>, 946 F. Supp. 2d 267, 277–78 (N.D.N.Y. 2013)(citing <u>Cragg v. Allstate Indem. Corp.</u>, 926 N.Y.S.2d 867, 869 (2011)).

In order to justify an award of damages for conscious pain and suffering, a plaintiff has the threshold burden of proving consciousness for at least some period of time following an accident or injury. <u>Id</u>., citing <u>Cummins v. Cnty. of Onondaga</u>, 618 N.Y.S.2d 615, 616 (1994) (citation omitted). A plaintiff may meet his burden with direct or circumstantial evidence, but "[m]ere conjecture, surmise or speculation is not enough to sustain a claim for [pain and suffering] damages." <u>Id.</u>, citing <u>Cummins</u>, 618 N.Y.S.2d at 616 (citation omitted). "Without legally sufficient proof of consciousness following an [injury], a claim for conscious pain and suffering must be dismissed." <u>Id</u>. (citation omitted).

"On a motion for summary judgment, the defendants bear the initial burden of showing that the decedent did not suffer conscious pain and suffering." <u>Cruz v. City of New Rochelle</u>, 2017 WL 1402122, at *29 (S.D.N.Y. 2017)(citing <u>Kevra v. Vladagin</u>, 96 A.D.3d 805, 806 (2d Dep't 2012)). Here, there are no known witnesses to decedent's unfortunate death. As soon as Mid-State Correction Officer Smaldon heard a "loud bang" in the bathroom area, he immediately responded to the bathroom where he found decedent. (Cowan Dec., Ex. P, bates stamp 000070-71). Decedent was unconscious at the time that Officer Smaldon discovered him, evidenced by the fact that Officer Smaldon immediately began CPR. (<u>Id</u>.). Decedent never regained consciousness. (<u>Id</u>.). Plaintiff provides only speculation and conjecture that decedent suffered fright and conscious pain and suffering for a period of time after he attempted suicide; indeed, she provides no expert analysis as to this claim.

Further, although Plaintiff contends the decedent's estate is entitled to funeral bills and medical expenses, she has not submitted any evidence of funeral expenses, medical expenses, or any other pecuniary losses. To the contrary, in response to Defendants' discovery demands Plaintiff never listed or provided evidence of any special damages whatsoever. (Cowan Dec., Ex. G at 6, 7; Id., Ex. I at 4, 5). Plaintiff testified that she paid a portion of the funeral expenses but had no other out of pocket expenses, including expenses for medical bills. (Id., Ex. J at 92-94).

For the reasons stated above, Plaintiff's survival action should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Defendants' motion pursuant to Fed. R. Civ. P 56(a) for an order granting summary judgment and dismissing Plaintiff's Complaint in its entirety and with prejudice must be granted, together with such other and further relief that the Court deems just and equitable.

Dated: Syracuse, New York
      January 12, 2023                    LETITIA JAMES
                                      Attorney General of the State of New York
                                        Attorney for Defendants
                                        300 S. State Street, Ste. 300
                                        Syracuse, New York 13202
                                        By: _____s/_____
                                        Aimee Cowan, Esq.
                                        Assistant Attorney General
                                        Bar Roll No. 516178
                                        Telephone:      (315) 448-4800
                                        Fax: (315) 448-4853
                                        Email: aimee.cowan@ag.ny.gov

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 12, 2023, she filed Defendants' Motion for

Summary Judgment by electronically filing with the Clerk of the Court herein, which is understood

to have sent notification of such filing electronically to the following:

    Yamile Kalkach, Esq.
    Hillary Nappi, Esq.
    Hach Rose Schirripa & Cheverie, LLP
    112 Madison Avenue
    New York, NY 10016


Dated:        January 12, 2023

                                    LETITIA JAMES
                                    Attorney General of the State of New York
                                    Attorney for Defendants
                                    300 S. State Street, Ste. 300
                                    Syracuse, New York 13202
                                    By: ____/s_____
                                    Aimee Cowan, Esq.
                                    Assistant Attorney General
                                    Bar Roll No. 516178
                                    Telephone:    (315) 448-4800
                                    Fax:  (315) 448-4853
                                    Email: aimee.cowan@ag.ny.gov