UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF NEW YORK

_____

The Estate of Joseph P. King, by and through its
Administratrix, Amy King, and
Amy King in his own right,

|                          |                                    |
|--------------------------|------------------------------------|
|                  *Plaintiff,* | **DEFENDANT** |
|                          | **SULLIVAN'S** |
|                          | **RESPONSES TO** |
|                          | **PLAINTIFF'S FIRST SET** |
|                          | **OF INTERROGATORIES** |
|          -against-       | |
|                          | 9:20-CV-1413 |
|                          | (TJM/ML) |

Anthony J. Annucci, Acting Commissioner, State of New
York Department of Corrections, in his individual capacity;
and Marie T. Sullivan, Commissioner, State of New York
Department of Mental Health, in his individual capacity;
Jami Palladino, Mid-State Social Worker, in his individual
capacity; Hal Meyers, Mid-State Chief Mental Health Counselor,
in his individual capacity;

*Defendants.*
_____

Defendant Ann Marie T. Sullivan ("Defendant") by her attorney, Letitia James, Attorney

General of the State of New York, Aimee Cowan, Assistant Attorney General, of Counsel

hereby responds to Plaintiff's First Set of Interrogatories as follows:

## GENERAL OBJECTIONS

1.  These responses and objections are made based on Defendant's knowledge of the facts

and information presently available.  Defendant's investigation and development of all facts and

circumstances relating to this action is ongoing.  These responses and objections are made

without prejudice to, and are not a waiver of, Defendant's right to rely on other facts or

documents at trial.

2.  Defendant's responses and objections to requests or the production of any documents

shall not be construed as: (a) an admission as to the relevance, admissibility, or materiality of any such documents or their subject matter; (b) a waiver or abridgement of any applicable privilege; or (c) an agreement that requests for similar documents will be treated similarly.

3.  By making the accompanying responses and objections to Plaintiff's First Set of Interrogatories, Defendant does not waive, and hereby expressly reserves, her right to assert any and all objections as to the admissibility of such responses into evidence in this action, on any and all grounds permitted or consistent with the Federal Rules of Evidence and any applicable privilege.

4.  Defendant reserves all of her rights to object to the admissibility of any part of any document produced in response to any request or information contained in any such document.

5.  Defendant reserves all of her rights, including her rights to supplement, amend, modify, revise, clarify or correct any or all of her responses and objections to these requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6.  Defendant objects to each instruction, each definition, and each document demand to the extent that it purports to impose upon Defendant any requirement or discovery obligations greater than or different from those set forth in the Federal Rules of Civil Procedure and the applicable Local Rules and Orders of this Court.

7.  Defendant objects to each document request that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

8.  Defendant objects to Plaintiff's First Set of Interrogatories to the extent they are posed without time limitation, vague, ambiguous, and/or susceptible to numerous interpretations.

9.  Defendant objects to each instruction, definition, and document requests, to the extent that it seeks documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, law enforcement privilege, Civil Rights Law §50-a, or any other applicable

2

privilege.   Should any such disclosure by Defendant occur, it is inadvertent and shall not constitute a waiver of any privilege.

10. Defendant incorporates by reference every general objection set forth above into each specific response set forth below.  A specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response does not waive any general objection to that request.  Moreover, Defendant does not waive her right to amend her responses.

## <u>RESPONSES</u>

**INTERROGATORY 1:** Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

<u>Response</u>:   **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper.   Defendant specifically objects to this demand to the extent it requests identification of each person "assisting in any way" as overly broad, unduly burdensome and vague.**

**Notwithstanding such objections, Defendant Ann Marie T. Sullivan supplied information and assisted in preparing answers to these interrogatories. AAG Aimee Cowan drafted responses to these interrogatories. New York State Office of Mental Health Associate Counsel Margaret Drake assisted in providing documents responsive to these demands.**

**INTERROGATORY 2:** Identify all persons or entities that have possession, custody, or control of documents relevant to this suit and the documents over which they have possession, custody, or control.

<u>Response</u>:   **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper.   Specifically, Defendant objects to this demand for documents "relevant to this suit" as vague, ambiguous and overly broad. Defendant objects to this demand to the extent that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence.**

**Notwithstanding such objections, documents that I believe are relevant to this suit are included in Decedent's DOCCS medical records and Office of Mental Health records.**

**INTERROGATORY 3:** For any statements that have been taken from Decedent, or taken on Decedent's behalf, relating to the facts that are the subject of this litigation, please state the following:

    a. The identity of the person who gave or made the statement.

    b. The substance of the statement.

    c. The date when the statement was taken.

    d. The identity of the person who took the statement.

    e. When this statement was reduced to writing.

    f. The present location of the statement and the identity of the person now in possession of the statement.

    g. Whether Defendant will, without a formal request to produce, attach a copy of all statements described in the answer to this interrogatory.

<u>Response</u>: **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Specifically, Defendant objects to this demand for "statements" as overly broad and vague. Defendant objects to this demand for statements "taken on Decedent's behalf" as vague and ambiguous. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence.**

**Notwithstanding such objections, my interactions with Decedent would have been memorialized in his Office of Mental Health records; however, I never met with Decedent. Please provide a duly executed authorization for the release of Decedent's Office of Mental Health records.**

**INTERROGATORY 4:** Identify all prior incidents involving an accusation for failure to provide medical treatment against You. Respond as follows:

    a. State the date of the incident.

    b. State the surrounding circumstances and a description of the failure to provide medical treatment.

    c. State the final resolution of the incident.

4

**Response**: **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, not limited in time and improper. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence. Defendant specifically objects to this demand to the extent it requests prior incidents involving an "accusation" for "failure to provide medical treatment" on the grounds that it is vague, ambiguous and overly broad. Notwithstanding such objections, as the Commissioner of the Office of Mental Health, I did not provide medical treatment to DOCCS inmates or OMH patients during the relevant time period of 2013 to 2018, when Decedent was incarcerated.**

      **INTERROGATORY 5:** Identify all previous complaints or lawsuits that have been filed against You within the last five years preceding the date of the events giving rise to this lawsuit.

**Response**: **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand for previous "complaints" filed against Defendant as vague and ambiguous. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence. Defendant objects to this demand to the extent that it requests information that is a matter of public record.**

      **Notwithstanding such objections, to my knowledge, there have been lawsuits filed against me in my capacity as the Commissioner of the NYS Office of Mental Health.   However, I have no recollection of the titles of those lawsuits.**

      **INTERROGATORY 6:** Identify and describe all interactions, including conversations or physical contact You had with Joseph King during his incarceration in November 2018.

**Response**: **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence. Defendant specifically objects to a request for a description of "all interactions, including conversations or physical contact" between Defendant and Joseph King, on the grounds that it is vague, unduly burdensome and overly broad.**

      **Notwithstanding such objections, I had no contact, interaction or conversation with the decedent.**

      **INTERROGATORY 7:** State whether you have obtained any statements, written or oral, from any potential witnesses in this matter, and, if so, set forth for each

statement:

    a. Identify the potential witness;
    b. The date that the witness' statement was made;
    c. A summary of the witness' statement;
    d. Identify the person who obtained the statement or to whom the statement was made; and
    e. The location where the witness' statement is being maintained.

**Response:** **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence. Defendant specifically objects to a demand for "statements" from "potential witnesses in this matter," on the grounds that it is ambiguous. If "this matter" refers to events leading up to Decedent's suicide on November 16, 2018, then I did not obtain any "statements" from any witnesses.**

    **INTERROGATORY 8:** State and describe in detail all evidence including documents, affidavits, and/or statements upon which you intend to rely or submit as evidence at trial.

**Response:** **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand as premature, given that discovery has not yet been completed.**

    **Notwithstanding such objections, please refer to Decedent's Office of Mental Health records. I reserve my right to amend this response.**

    **INTERROGATORY 9:** Identify each denial of a material allegation and each affirmative defense in Your Answer to the Amended Complaint, and for each:

    a. State all facts upon which You base the denial or affirmative defense;
    b. Identify all persons who have knowledge of those facts; and
    c. Identify all documents and tangible things that support your denial or affirmative defense and attach copies to the answers to these Interrogatories.

**Response:** **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence. Specifically, Defendant objects to this demand on the grounds that it calls for a legal conclusion. In fact, this request is a "contention interrogatory," which is permitted by Fed. R. Civ. P.**

33(c) but the obligation to respond should be postponed until the end of the discovery period, absent a showing by the requesting party of a particular need. *Nimkoff v. Dollhausen,* 262 F.R.D. 191, 195 (E.D.N.Y. 2009). *See also*, Fed. R. Civ. P. 33 advisory committee's note, 1970 amendment ("Since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer").

Given that Plaintiff has not demonstrated a "particular need" requiring a response to these interrogatories prior to the end of discovery, Defendant reserves the right to amend these responses.

**INTERROGATORY 10:** Describe your responsibilities/occupational duties in November 2018 and describe:

a. How your responsibilities/occupational duties related to Decedent King;
b. Identify all persons who you oversaw your responsibilities/occupational duties;
c. Identify all persons who reported to you during in the relevant time period and describe their role in your responsibilities/occupational duties;
d. Identify all persons who have knowledge of those facts; and
e. Identify any documents which support this answer.

**Response**: Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence.

Notwithstanding such objections:

a. The Commissioner of the Office of Mental Health fulfills primary executive responsibility for the direction of State and Office of Mental Health policy; conducts liaison activities with executive staff in other agencies and with the Office of the Governor; provides operational leadership and policy direction and oversight to the State's psychiatric hospitals; implements quality mental health initiatives by fostering collaboration between stakeholders and federal, State, and local governments; interacts and coordinates with other public health agencies to ensure appropriate, cost effective integration of services; oversees licensing and certification of all mental health programs in New York State; directs the development and implementation of fiscal and administrative controls to achieve fiscal savings while preserving the ability of hospitals to meet federal quality standards and increase service access; and supervises and directs the Office

7

of Mental Health's executive staff to ensure coordination of Agency programs and functions, promote efficiency, implement best practices and control costs.

Additionally, the Commissioner leads system transformation through the implementation of a community based system of care and the implementation of a managed care system which optimizes access to appropriate and effective mental health services for adults with serious mental illness, children with serious emotional disturbance, and consumers with special needs (i.e. forensic, homeless, chemically dependent, etc.), as well as the development of coordinated, comprehensive networks of providers who deliver a balanced array of medical, self-help, social, supportive and rehabilitative services and programs.

b. Defendant objects to this demand for information regarding who "oversaw" Defendant's responsibilities/occupational duties as vague and ambiguous. Notwithstanding such objections, I report to the Governor of the State of New York.

c. Objection to this demand as vague, ambiguous and overly broad. Notwithstanding such objections, all OMH employees report to me.

d. Objection to this demand as vague, ambiguous and overly broad. Objection to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence.

e. Objection to this demand as vague, ambiguous and overly broad. Notwithstanding such objections, my job title in November 2018 was Commissioner.

**INTERROGATORY 11:** State the name and titles of all persons tasked with providing medical care to Decedent King.

Response: Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence. Defendant specifically objects to this demand to the extent it requests the names and titles of all persons "tasked with providing medical care" on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and outside the relevant time period. Defendant objects to this demand to the extent that it demands the identities of individuals who provided Decedent medical treatment, given that as the Commissioner for the Office of Mental Health I have never provided medical treatment to Decedent or any other inmate.

8

Notwithstanding such objections, Decedent's medical care received through DOCCS is documented in his DOCCS medical records. I am unaware of the identities of persons who provided medical care to Decedent either within DOCCS or by outside facilities/institutions/providers.

**INTERROGATORY 12:** Identify all written policies concerning medical treatment provided to inmates concerning mental health, including but not limited to, treatment for reported suicidal ideation. Respond as follows:

    a. The date of the policy
      b. The author of the policy
      c. The date of updates for the policy;
      d. The frequency of review of the policy; and
      e. Where the policy is stored and maintained .

<u>Response</u>: **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence. Defendant objects to this demand given that I am the Commissioner for the Office of Mental Health who never provided medical treatment to Decedent or any other inmate. Defendant objects to this demand to the extent that it characterizes Decedent as reporting suicidal ideation prior to his death.**

**Notwithstanding such objections, see Exhibits "A," "B," "C," "D," and "E."**

**INTERROGATORY 13:** Identify all written policies concerning the use of shoelaces by inmates. Respond as follows:

      a. The date of the policy
      b. The author of the policy
      c. The date of updates for the policy;
      d. The frequency of review of the policy; and
      e. Where the policy is stored and maintained.

<u>Response</u>: **Defendant objects to this demand on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and improper. Defendant objects to this demand for written policies "concerning the use of shoelaces by inmates" as vague, ambiguous and overly broad. Defendant objects to this demand on the grounds that it is not reasonably calculated to lead to the discovery of relevant, admissible evidence.**

**Notwithstanding such objections, Defendant is not aware of any Office of**

9

**Mental Health policies specifically responsive to this request. Note that the "RCTP Observation Cells & Dormitory Beds" policy details permitted items for those cells.** *See***, Exhibit "B".**

**DEFENDANT RESERVES THE RIGHT TO AMEND THESE RESPONSES.**

Dated:       November _____, 2021
Syracuse, New York

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
Syracuse Regional Office
300 S. State Street, Suite 300
Syracuse, New York 13202

By: _____
Aimee Cowan
Assistant Attorney General, of Counsel
Bar Roll No. 516178
Telephone: (315) 448-4800
Fax: (315) 448-4852 (Not for service of papers.)
Email: Aimee.Cowan@ag.ny.gov

To:    Hach Rose Schirripa & Cheverie, LLP
Hillary Nappi
Frank R. Schirripa
112 Madison Avenue
New York, NY 10016

Lento Law Group, P.C.
Douglas Scott Wiggins
*Admission Pending*
1500 Market Street
12th Floor - East Tower
Philadelphia, PA 19102

**<u>VERIFICATION</u>**

Ann Marie T. Sullivan, being duly sworn, says I have read the foregoing Defendant's Responses to Plaintiff's First Set of Interrogatories and know the contents thereof, and that the same is true of my own knowledge, except as to those matters herein stated to be alleged on information and belief and that as to those matters I believe it to be true.

ANN MARIE T. SULLIVAN

Sworn to before me this
22nd day of November, 2021.

Notary Public

> DUANE CORNELLA
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration Number # 01CO6152355
> Qualified in New York County
> Commission Expires Sep. 18, 20 22

11

| CENTRAL NEW YORK PSYCHIATRIC CENTER | Date: 11/9/15 | Policy # 1.0 |
|---|---|---|
| ***CORRECTIONS-BASED OPERATIONS MANUAL***<br><br>**ASSESSMENT** | Supercedes: 5/22/14 | Page (s): 1 of 3 |
| Prepared by:<br>Steve Gross, PsyD, Chief Psychologist<br>Nichole Marioni, PhD, Chief Psychologist | Policy:<br><br>**Comprehensive Suicide Risk Assessment Process** | |
| Approved By:<br>Cabinet<br>Medical Staff Executive Committee | | |

**POLICY:**

Documented data demonstrates that suicide risk exists within the forensic population. Therefore, CNYPC clinicians complete the ongoing process of Comprehensive Suicide Risk Assessment to ensure inmate-patient safety and timely interventions and to maximize positive inmate-patient outcomes. Upon entry into Reception, all inmates are assessed for suicide risk by OMH clinicians utilizing the Suicide Prevention Screening Guidelines and CNYPC Brief Mental Health Assessment. If an inmate is admitted to services, the clinician assesses and documents acute and chronic risk factors, protective factors, notes the presence or absence of warning signs (IS PATH WARM) of imminent suicide risk, and documents a plan of action to address any suicide risk identified. Results and recommendations from the suicide risk assessment are taken into consideration when developing and updating the treatment plan and in making the decision regarding whether to admit to a higher level of care.

**REFERENCES:** The Joint Commission National Patient Safety Goal #15
IS PATH WARM mnemonic for warning signs of imminent suicide risk
(American Association of Suicidology, www.aas.org)
HOT FLAGS mnemonic for prison-based risk factors for imminent suicide risk

**DEFINITIONS:** **Warning Signs** – indicators of imminent suicidal behavior, summarized by the mnemonic **IS PATH WARM:**

| | | |
|---|---|---|
| **I** | = | Ideation - Threats, talk about death, dying, suicide |
| **S** | = | Substance Abuse - Increased use of alcohol, of drugs |
| **P** | = | Purposeless - Feeling like a failure, burden, no reasons for living |
| **A** | = | Anxiety - Agitation, restlessness, unable to sleep |
| **T** | = | Trapped - No options, no way out |
| **H** | = | Hopelessness - Defeated, no value to anyone, nobody cares |
| **W** | = | Withdrawal - From friends, family, sleeping all the time |
| **A** | = | Anger - Irritable, enraged, seeking revenge |
| **R** | = | Recklessness - Impulsive, risky activities |
| **M** | = | Mood Changes - Depressed, preoccupied, agitated, sudden calm |

**Prison-based suicide risk factors derived from CNYPC psychological autopsies (1993-2010):**

| | | |
|---|---|---|
| **H** | = | Harassment/Threats - Real or perceived |
| **O** | = | Overwhelmed by Prison |
| **T** | = | Transfer – Pending or recent |
| **F** | = | Family Estrangement |
| **L** | = | Lost Relationship |
| **A** | = | Appeal/Parole/Court Hearing |
| **G** | = | Gang Threats |
| **S** | = | Sanctions – Tickets/SHU/loss of privileges |

| *CORRECTIONS-BASED OPERATIONS MANUAL* | Date: 11/9/15 | Policy #: 1.0 | Page: 2 of 3 |
|---|---|---|---|
| **ASSESSMENT** *-Continuation Page-* | Policy: | **Comprehensive Suicide Risk Assessment Process** | |

## PROCEDURE:

The Comprehensive Suicide Risk Assessment (CSRA) process begins at the time an OMH clinician screens an inmate or admits an inmate-patient to services. Suicide risk assessment is an on-going process from admission to discharge.

**A. Screening Admission Note**

The OMH clinician assesses the inmate-patient for suicide risk, including presence/absence of suicide warning signs (IS PATH WARM) and completes the Suicide Risk Assessment section in the Screening/Admission Note for each screening and upon admission to services.

**B. Comprehensive Suicide Risk Assessment (CSRA) Form**

The Primary Therapist completes the CSRA Form. Information is obtained from prior records/PSYCKES report (if available), the Screening Admission Note, Initial Psychiatric Progress Note, and any other available assessments along with information obtained via inmate-patient interview.

**Time Frames:**

A CSRA Form should be completed at the following times:

- **New Admission/Readmission**: Completed within 30 days
- **Unit-to-Unit Transfer**: Reviewed at the time of first clinical contact (within 14 days of transfer); a new form completed if clinically indicated
- **Return from CNYPC Inpatient**: Within 14 days
- **As clinically indicated**: That is, when significant changes occur relevant to suicide risk (e.g., new or strengthened risk factors such as disciplinary sanctions, different type or increased severity of self-harm, suicide attempt; loss of protective factors such as terminated relationship), or to an inmate-patient's Treatment Plan goal related to suicide (including the closing/discontinuing of a goal)

**C. Treatment Planning**

- At the time the Treatment Plan is developed, progress notes and the CSRA Form are reviewed for chronic and acute risk factors, protective factors, warning signs and recommendation/plan for addressing suicide risk. Treatment recommendations related to suicide risk are documented on the Treatment Plan.
- If the inmate-patient is at risk for suicide, this problem should be listed and incorporated into the Treatment Plan with goals, objectives and methods to include addressing dynamic risk factors and increasing protective factors to reduce overall suicide risk.
- The CSRA Form will be reviewed at each Treatment Plan Review (TPR). The review will be documented in the TPR identifying any changes to the CSRA Form and subsequent updates to treatment goals, objectives and methods, as indicated.

| | |
|---|---|
| **ASSESSMENT**<br>*-Continuation Page-* | Policy:<br>**Comprehensive Suicide Risk Assessment Process** |

## D. Progress Notes:

Each time a Primary Therapist or Psychiatrist/Nurse Practitioner has a clinical contact with an inmate-patient, the presence of warning signs and/or changes in the risk and protective factors is assessed and documented in a Progress Note.  A new CSRA Form is created with any new information or changes in any information previously documented on the form.

### Primary Therapist

Suicide risk will be addressed on each formatted Primary Therapist Progress Note and RCTP Daily Progress Notes. Changes in risk or protective factors, discussion of warning signs, assessment of the inmate-patient's current functioning, and description of suicide risk-related treatment plan will be documented on the Primary Therapist Progress Notes and RCTP Daily Progress Notes.

### Psychiatrist/ Nurse Practitioner

Suicide risk, any changes to the risk factors, protective factors and warning signs, and review of the CSRA Form will be documented in the structured Psychiatric Progress Note.

## E.  Discharge/Termination

An assessment of the inmate-patient's suicide risk is included in the Discharge Summary/or Termination Transfer Progress Note at the time of discharge or termination/transfer.

**FORM(S):**
Comprehensive Suicide Risk Assessment Form # MED CNY 486
Screening Admission Note Form #308 MED (MH)
Primary Therapist Progress Note Form # MED CNY 349
RCTP Daily Progress Note Form # MED CNYPC 360
SHU Mental Health Assessment Form # 107 MED CNYPC
Initial Psychiatric Progress Note # 355 MED CNYPC
Psychiatric Progress Note Form # 356 MED CNYPC
Termination Transfer Progress Note Form # 420 MED CNYPC
Discharge Summary Form # 340 MED CNYPC

Index Terms:  Suicide Risk, Suicide Assessment, CSRA

| Central New York Psychiatric Center *CORRECTIONS-BASED OPERATIONS MANUAL* **CRISIS INTERVENTION SERVICES** | Date: 1/17/19 | Policy # 4.0 |
|---|---|---|
| | Supersedes: 6/1/16 | Page(s): 1 of 9 |
| Prepared By: FPA | Policy: **RCTP Observation Cells** | |
| Approved By: Medical Staff Executive Committee | **& Dormitory Beds** | |

**POLICY:** Corrections-Based Operations staff will utilize a standardized procedure for transferring inmate-patients to Residential Crisis Treatment Program (RCTP) Observation Cells and Dormitory Beds. Based upon clinical assessment, some inmate-patients in Downstate's Forensic Diagnostic Unit (FDU) receive RCTP level of care, and RCTP policies are followed.

Note: Observation cells should be utilized only for inmate-patients who may be psychiatrically unstable, unpredictable and/or a danger to themselves or others. Inmate-patients may be placed in Observation cells for respite care only when placement in a dorm bed is not approved by a DOCCS security supervisor.

Note: On occasion, DOCCS staff may house an inmate in an RCTP observation cell or FDU cell, solely for security reasons. The placement of an inmate into RCTP under these circumstances does not constitute an RCTP transfer, nor does it require providing the inmate with RCTP level of care.

**DEFINITIONS:**

Observation Cell - A cell located in an RCTP that is designed to enhance inmate-patient safety and facilitate observation and assessment during a crisis. Inmate-patients in FDU can receive RCTP level of care when clinically indicated.

Dormitory Bed - A bed located in an RCTP Dormitory in which an inmate-patient is housed to facilitate the observation and monitoring of his/her behavior in order to assess and address the inmate-patients mental health treatment needs.

**PROCEDURE:**

1. Transfers to the RCTP

   A. Day Shift – Normal Work Day

      1)   Only the Unit Chief, a psychiatrist/nurse practitioner or the Unit Chief's designee can authorize that an inmate-patient be placed in an Observation Cell or Dormitory Bed during normal business hours. The RCTP Coordinator, in conjunction with the Psychiatrist/NP or Unit Chief/Designee, makes the clinical determination that an inmate-patient who requires RCTP services can safely receive those services in an Observation Cell or Dormitory Bed.

| ***CORRECTIONS-BASED OPERATIONS MANUAL*** | Date: 1/17/19 | Policy # 4.0 | Page: 2 of 9 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Policy: **RCTP Observation Cells & Dormitory Beds** | | |

2)      The recommendation to transfer the inmate-patient to an RCTP Observation Cell is communicated to the RCTP First Officer or Designee.

   a)  If DOCCS security staff approve the RCTP admission, the RCTP Coordinator or designee coordinates the admission, and completes the required UCR documentation as described in Step 3. below.

   b)  If DOCCS security staff disapprove an OMH clinical recommendation for RCTP services to be rendered in an Observation Cell, this security decision is documented by the RCTP Coordinator in a progress note in the inmate-patient's mental health record and is reported at the next daily clinical team meeting.

3)  OMH Nursing staff advise DOCCS Nursing staff of the inmate-patient's arrival and need for initial medical assessment. It is the responsibility of DOCCS Medical staff to provide all medical treatment for the patient residing in the RCTP Observation Cells/Dormitory, including medical medications, regardless of owning facility.

B.  Evening Shift/Weekends/Holidays

   1)      During the evening shift of normal work days or during both day and evening shifts of weekend days and holidays, the OMH nurse may make the clinical determination that an inmate-patient who requires RCTP services can safely receive those services in an RCTP Observation Cell or a Dormitory Bed.

2)      The recommendation to transfer the inmate-patient to the RCTP is communicated to the RCTP First Officer or Designee.

   a)  If DOCCS security staff approve the RCTP admission, the OMH nurse or designee coordinates the admission to the Observation Cell or Dormitory Bed and completes the required UCR documentation as described in Step 3 below.

   b)  When DOCCS security staff disapprove an OMH clinical recommendation for RCTP services to be rendered in an RCTP Observation Cell or Dormitory Bed, this security decision is documented by the OMH nurse in the RCTP Nursing Progress Note and is reported at the next daily clinical team meeting.

3)  OMH Nursing staff will advise DOCCS Nursing staff of the inmate-patient's arrival and need for initial medical assessment. It is the responsibility of DOCCS Medical staff to provide all medical treatment for the patient residing in the RCTP Observation Cells/Dormitory, including medical medications, regardless of owning facility.

| ***CORRECTIONS-BASED OPERATIONS MANUAL*** | Date: 1/17/19 | Policy # 4.0 | Page: 3 of 9 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** <br> *-Continuation Page-* | Policy: <br> **RCTP Observation Cells & Dormitory Beds** | | |

C. Overnight Shifts – No OMH Staff On Duty

   1)  During those hours when there is no OMH staff on duty, the Watch Commander or designee may place an inmate in an RCTP Observation Cell or Dormitory Bed.  OMH staff will evaluate the inmate during the first shift following the placement and complete the required UCR documentation as described in Step 3. below.

   2)  During the first shift following the placement OMH Nursing staff will advise DOCCS Nursing staff of the inmate-patient's arrival and need for initial medical assessment. It is the responsibility of DOCCS Medical staff to provide all medical treatment for the patient residing in the RCTP Observation Cells/Dormitory, including medical medications, regardless of owning facility.

2.  Minimum Cell Items

Upon transfer into an Observation Cell, the minimum items to be provided to the inmate-patient will be documented on the RCTP/Suicide Watch Monitoring Chart posted outside the inmate-patients observation cell.  Paper gowns are not used in providing the minimum cell items to inmate-patients receiving RCTP level of care.  In any instance where staff do not provide the minimum items listed below, they will document the justification for that decision on the RCTP/Suicide Watch Monitoring Chart as described in UCR policy 9.24 "RCTP/Suicide Watch Monitoring Chart."

   A.  The minimum observation cell items provided to every inmate-patient are:

- One specialized tear and fire resistant mattress
- Two specialized tear resistant safety mats
- One specialized tear resistant smock
- Footwear
- Feminine Hygiene items if needed
- Soap (returned following use)
- Toothbrush (returned following use)
- Eating utensils (returned following use)

   B.  Subsequent changes in minimum cell items are documented on the RCTP/Suicide Watch Monitoring Chart also described in UCR policy 9.24.

| ***CORRECTIONS-BASED OPERATIONS MANUAL***<br><br>**CRISIS INTERVENTION SERVICES**<br>*-Continuation Page-* | Date: 1/17/19 | Policy # 4.0 | Page: 4 of 9 |
|---|---|---|---|
| | Policy:<br>**RCTP Observation Cells & Dormitory Beds** | | |

3.  RCTP Observation Cell/Dormitory Bed Documentation

    A.  Documentation at Intake

        1)  Day Shift – Normal Work Day

        The RCTP Coordinator or designee conducting the initial assessment completes the following documents:

            a)  For active patients:
                - RCTP Observation/Dorm Initial Progress Note (MED CNYPC 360)
                - Update Chronological Record
                - RCTP/Suicide Watch Observation Monitoring Chart (MED CNY 455) **\*for OBS Cells ONLY**

            b)  For inmates not already on the caseload:
                - Admission/Screening Form 725
                - RCTP Observation/Dorm Initial Progress Note (MED CNYPC 360)
                - Treatment Needs/Service Level Designation Form
                - Chronological Record (Update Existing Chronological Record if Applicable)
                - RCTP/Suicide Watch Observation Monitoring Chart (MED CNY 455)  **\*for OBS Cells ONLY**


            c)  OMH Nursing staff will complete a Nursing Assessment within 24 hours of admission to the RCTP as described in policy # 9.18.

        2)  Evening Shift/Weekends/Holidays

        The OMH nurse conducting the initial assessment completes the following documents:

            a)  For active patients:
                - RCTP Nursing Progress Note (353 MED CNYPC)
                - Section A of the RCTP Nursing Assessment 330 MED CNYPC – Remainder of form must be completed within 24 hours of the inmate-patient's admission to RCTP.
                - RCTP/Suicide Watch Observation Monitoring Chart (MED CNY 455)  **\*for OBS Cells ONLY**

| ***CORRECTIONS-BASED OPERATIONS MANUAL***<br><br>**CRISIS INTERVENTION SERVICES**<br>*-Continuation Page-* | Date: 1/17/19 | Policy # 4.0 | Page: 5 of 9 |
|---|---|---|---|
| | Policy:<br>**RCTP Observation Cells & Dormitory Beds** | | |

b) For inmates not already on the caseload:
- RCTP Nursing Progress Note (353 MED CNYPC)
- Section A of the RCTP Nursing Assessment 330 MED CNYPC – Remainder of form must be completed within 24 hours of the inmate-patient's admission to RCTP.
- RCTP/Suicide Watch Observation Monitoring Chart (MED CNY 455)  **\*for OBS Cells ONLY**
- Partial completion of Admission/Screening Form 725:
  - Purpose = Active Screening
  - Name and DIN
  - Interview Date
  - Primary Language
  - Admitting Diagnosis = Deferred
  - Admission Type = Outpatient
  - Signature/Title/Date Completed

The RCTP Coordinator or designee, on the next business day, finishes the admission documentation requirements as described in Step 3. A. above, including completing the Admission/Screening Form 725 that was started by the nurse at the time the inmate-patient was admitted to the RCTP.

The treatment team's evaluation of the inmate on the first business day following placement in the RCTP Observation Cell constitutes the first of the three evaluations permitted for an active screening.  The inmate may be evaluated on active screening status in an RCTP Observation Cell for a maximum of three business days at which time a decision must be made to either terminate the screening and release the inmate from RCTP or to admit the inmate to the active mental health caseload.

.

3. Overnight Shifts – No OMH Staff On Duty

The RCTP Coordinator or designee, on the next business day, finishes the admission documentation requirements as described in Step 3. A. above

| ***CORRECTIONS-BASED OPERATIONS MANUAL*** **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Date: 1/17/19 | Policy # 4.0 | Page: 6 of 9 |
|---|---|---|---|
| | Policy: **RCTP Observation Cells & Dormitory Beds** | | |

B.  Documentation During Length of Stay

1) Nursing
- Daily RCTP Nursing Progress Note (form 353 MED CNYPC) each shift when the patient is in RCTP.

2) RCTP Coordinator/Primary Therapist
- RCTP Observation/Dorm Progress Note (MED CNYPC 360A) each business day for OBS Cell patients, and weekly for Dormitory Bed patients.
- RCTP Observation Referral to Clinical Director/Designee Progress Note (MED CNYPC 358) - required upon CNet-CBO e-mail notification that an inmate-patient has been housed in an RCTP Observation Cell in excess of seven days. Should the CNet-CBO e-mail notification occur on a weekend or holiday, this progress note must be completed on the next business day.
- Additional subsequent RCTP Observation Referral to Clinical Director/Designee Progress Notes are completed every seven days from the date of the original consultation for the duration of an inmate-patient's stay in an RCTP Observation Cell.

Note:  In the event that the treating psychiatrist or alternate on-site prescriber is absent from the facility duties on a given business day, the Unit Chief may discharge an RCTP inmate-patient, after consulting with the available treatment team members.

3) Psychiatry
- Initial Psychiatric Evaluation Progress Note completed on first business day of admission to Observation Cell if inmate is being admitted to services, when a psychiatrist/nurse practitioner is available on-site
- Psychiatric Progress Note completed on first business day of admission to Observation Cell if inmate-patient is already ready receiving active mental health services, when a psychiatrist/nurse practitioner is available on-site
- Psychiatric Progress Note weekly if inmate-patient's length of stay in Observation Cell exceeds seven days
- Psychiatric Progress Note at time of discharge from Observation Cell, when a psychiatrist/nurse practitioner is available on-site

| ***CORRECTIONS-BASED OPERATIONS MANUAL*** **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Date: 1/17/19 | Policy # 4.0 | Page: 7 of 9 |
|---|---|---|---|
| | Policy: **RCTP Observation Cells & Dormitory Beds** | | |

4.  Private Interviews

All patients will be offered private clinical interviews in a confidential area outside of their RCTP cell each business day by a psychiatrist/nurse practitioner and/or the RCTP Coordinator/Primary Therapist.  Whenever possible the Psychiatrist/NP and clinician conduct these daily private interviews together as a clinical team and report their recommendations at the daily treatment team meeting.  These private out-of cell interviews are documented in RCTP progress notes.  Should the patient refuse an interview, a progress note will be written to document all relevant information regarding the refusal.

5.  Length of Stay Greater Than Seven Calendar Days

An automated CNet-CBO email referral notification will be sent to the Unit Chief, the patient's treating psychiatrist/nurse practitioner and CNYPC executive team members when an inmate-patient remains in an RCTP Observation Cell in excess of seven calendar days, even if they no longer require RCTP care but are awaiting DOCCS transfer.  The e-mail notification always takes place on the eighth day of an inmate-patient's stay in an RCTP Observation Cell.

A.  A consultation with the Regional Psychiatrist, Clinical Director or Designee must occur if an inmate-patient remains in an RCTP observation cell in excess of seven calendar days.  The initial consult should take place on the day of the CNet-CBO e-mail notification.   Should the CNet-CBO e-mail notification occur on a weekend or holiday, the consultation must take place on the next business day.  This consultation must occur regardless of any other previous consultations and is documented via an RCTP Referral to Clinical Director/Designee Progress Note (as described in CBO policy 9.30, "Progress Notes") that is completed on the day that the consultation takes place.  Additional subsequent consults with the Regional Psychiatrist, Clinical Director or Designee will take place as-indicated and every seven days from the date of the initial consult for the duration of the RCTP Observation Cell stay.

B.  The RCTP coordinator updates the RCTP fields in CNet-CBO:

1)  "Yes" is entered in the "Consulted on case due to clinical length of stay being more than 7 days" field.

2)  The name of the psychiatrist who provided the consult, the date and any other pertinent information relating to the case is documented in the "Comments" field.

| ***CORRECTIONS-BASED OPERATIONS MANUAL***  **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Date: 1/17/19 | Policy # 4.0 | Page: 8 of 9 |
|---|---|---|---|
| | Policy:  **RCTP Observation Cells & Dormitory Beds** | | |

6.  Discharges from RCTP

   A.  Transfers out of an RCTP Observation Cell/Dormitory Bed can occur when:
   - The crisis precipitating the transfer to RCTP has been resolved.
   - The psychiatric assessment suggests the patient is capable of meaningfully participating in programming and that return to a lower level of care represents the least restrictive and appropriate means of treatment.
   - The psychiatric assessment determines the need for an increased level of treatment, e.g. transfer to CNYPC.
   - The need for an Observation Cell level of care is no longer met, and a step-down to a Dormitory Bed is warranted.

   B.  Documentation requirements for transfers out of an RCTP Observation Cell/Dormitory Bed consist of:
   - Psychiatric Progress Note (if applicable)
   - In the event of a release by a Unit Chief (refer to section #3B Note), this release will be documented in a progress note.  The Unit Chief will also inform the treating prescriber upon their return.
   - RCTP Observation/Suicide Watch Monitoring Form is updated with date and time of release and signature of Unit Chief/designee or psychiatrist.  **\*for OBS Cells ONLY**

   C.  Notifications

   Generally, readiness for transfer out of an RCTP Observation Cell/Dormitory Bed becomes apparent following one of the daily private interviews conducted together by the psychiatrist/NP and clinician.  Whenever possible, recommendations for transfer out of an RCTP cell are communicated first at the daily team meeting.  If circumstances don't allow for that, the RCTP Coordinator will consult with the Psychiatrist/NP or Unit Chief/Designee for approval.  This approval is documented by the Psychiatrist/NP or Unit Chief/Designee signature at the bottom of the RCTP/Suicide Watch Monitoring Chart as outlined in UCR Policy 9.24 **(\*for OBS Cells ONLY)**.  Upon approval, the RCTP Coordinator then notifies the following staff:
   - RCTP security staff
   - DOCCS Inmate Records Coordinator
   - Facility Inmate Movement Officer
   - OMH nursing staff
   - OMH support staff

| **CORRECTIONS-BASED OPERATIONS MANUAL** | Date: 1/17/19 | Policy # 4.0 | Page: 9 of 9 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Policy: **RCTP Observation Cells & Dormitory Beds** | | |

**FORM(S):**

Daily RCTP Nursing Progress Note (form 353 MED CNYPC)

RCTP Observation/Dorm Initial Progress Note (MED CNYPC 360)

RCTP Observation/Dorm Progress Note (MED CNYPC 360A)

Initial Psychiatric Evaluation Progress Note

Psychiatric Progress Note

Admission/Screening Form 725

RCTP/Suicide Watch Monitoring Chart Med CNY 455

Treatment Needs/Service Level Designation 167 Med CNYPC

RCTP Nursing Assessment 330 MED CNYPC

RCTP Referral to Clinical Director Progress Note (MED CNY 358)

Index Terms: RCTP, Admission, Observation Cell

| Central New York Psychiatric Center *CORRECTIONS-BASED OPERATIONS MANUAL* **CRISIS INTERVENTION SERVICES** | Date: 2/14/19 | Policy # 4.2 |
|---|---|---|
| | Supersedes:  6/1/16 | Page(s):  1 of 2 |
| Prepared By:  FPA | Policy: | **Suicide Watches** |
| Approved By:  Medical Staff Executive Committee | | |

**POLICY:**  DOCCS and OMH staff will utilize suicide watches to insure the safety of inmate-patients exhibiting or threatening suicidal behavior.

**DEFINITIONS**:

Suicide Watch – The constant observation of an inmate-patient believed to be at risk of suicide.  The ratio will never exceed one Corrections officer providing constant and simultaneous observation of two inmate-patients.

**PROCEDURE:**

Based on the physical characteristics of the cells at a particular location, the facility Watch Commander will determine the appropriate Corrections Officer to inmate-patient ratio should there be the need to provide a suicide watch for more than one inmate-patient.

    1.  An inmate-patient will be placed on a suicide watch by designated OMH or DOCCS staff, if they engage in behavior which is imminently dangerous to him/herself, or if they threaten either explicitly or implicitly to engage in such behavior.

    a)  When the decision to place an inmate-patient on a suicide watch is made by OMH staff, when on-site and following the assessment of an inmate-patient, the designated OMH staff must notify the area security supervisor and the facility Watch Commander of the need for the suicide watch.

    b)  During those times when OMH staff is not on-site, the decision to place an inmate-patient on a suicide watch may be made by a DOCCS staff member approved by that facility.  The Watch Commander will notify the Unit Chief/Coordinator or designee of any suicide watches in effect as soon as possible.

    2.  Any inmate-patient returning from an outside hospital trip necessitated by their actual or reported self-injurious behavior, or returning from an outside hospital trip during which the inmate-patient self-injured or reported suicidal ideation/intent, will be placed on a suicide watch by DOCCS staff upon the inmate-patient's return to a correctional facility.  OMH and DOCCS MH staff will coordinate an effort to have such an inmate-patient transported directly to a correctional facility with an available RCTP Observation Cell upon release from the outside hospital.

    3.  OMH staff will evaluate the inmate-patient daily during business days and determine if continuing the suicide watch is clinically indicated and, if so, will

| *CORRECTIONS-BASED OPERATIONS MANUAL* | Date: 2/14/19 | Policy # 4.2 | Page:  2 of 3 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Policy: | **Suicide Watches** | |

subsequently make the determination if the suicide watch will be continued or an admission to an RCTP Observation Cell will be pursued.

**\*\*The option for admission to an RCTP Observation Cell/Dorm Bed as per CBO Policy #4.4 4301 Transfers will not be applicable in the case of a patient in an adolescent facility.**  In that situation, please refer to CBO Policy # 11.0 Mental Health Treatment of Adolescents in DOCCS.

Should an RCTP Observation Cell not be available at the facility, OMH staff will make arrangements for a transfer to an available RCTP Observation Cell as described in CBO Policy # 4.4  "4301 Transfers".Facilities with full-time OMH staff will continue to assess the patient daily on business days to evaluate the need for continued suicide precautions or 4301 placement.  Facilities with only part-time OMH staff should assess during their normal work days at that facility.

If a suicide watch is continued at a facility with RCTP services, but an RCTP OBS Cell is not available, an RCTP Level of care will be provided to the patient along with all documentation requirements in CBO Policy # 4.0 "RCTP Observation Cells/Dormitory Beds".

4.  If the patient will be continued on a watch, an RCTP/Suicide Watch Monitoring Sheet (MED CNY 455) will be completed and left in the DOCCS Log Book.  This form should be returned to OMH as soon as the watch is completed to add to the UCR.

5.  Each time an OMH clinician evaluates an inmate-patient on a suicide watch, the clinician will review the entries in the DOCCS Suicide Watch Log and sign the log.

6.  It is the expectation that the Psychiatrist/Nurse Practitioner is consulted in the discontinuation of any suicide watch.  When a Psychiatrist/Nurse Practitioner is not available for consultation, the Unit Chief or their designee may discontinue a suicide watch, if clinically appropriate.  In non-satellite facilities, the OMH clinician, will review with their Satellite Unit Chief, Unit Coordinator, and/or any Psychiatrist/Nurse Practitioner available to provide case consultation as to whether a 4301 Transfer should take place, or if the watch should be discontinued.  For those watches that were discontinued, the clinician will document the factors considered in the discontinuation of the suicide watch in a progress note if the inmate-patient is on the active mental health caseload, or in a Screening/Admission Note if the inmate-patient is not on the active mental health caseload.  For those watches that are continued and need a 4301 transfer, OMH staff will make arrangements for a transfer to an available RCTP Observation Cell as described in CBO Policy # 4.4 "4301 Transfers".

7.  OMH staff will notify the facility Watch Commander of any decision to discontinue a suicide watch.

| CORRECTIONS-BASED OPERATIONS MANUAL | Date: 2/14/19 | Policy # 4.2 | Page:  3 of 3 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Policy: | **Suicide Watches** | |

**FORM(S):**
RCTP/Suicide Watch Monitoring Sheet (MED CNY 455)

Index Terms:  Suicide watch, 1:1, 1:2, amenities

| Central New York Psychiatric Center **CORRECTIONS-BASED OPERATIONS MANUAL**  **CRISIS INTERVENTION SERVICES** | Date:  2/14/19 | Policy # 4.4 |
|---|---|---|
| | Supersedes:  7/10/17 | Page(s):  1 of 5 |
| Prepared By:  FPA  Approved By:  Medical Staff Executive Committee | Policy:  **4301 Transfers** | |

**POLICY:**  CNYPC Corrections-Based staff will insure that inmate-patients housed in non-satellite unit facilities will have access to satellite unit mental health services as-needed to address emergency psychiatric situations by utilizing the emergency transfer provisions of DOCCS Directive 4301.

> **\*\*The option for admission to an RCTP Observation Cell/Dorm Bed as per CBO Policy #4.4 4301 Transfers will not be applicable in the case of a patient in an Adolescent Offender Facility.**  In this situation, please refer to CBO Policy #4.2 Suicide Watches.

**REFERENCES:**

DOCCS Directive 4301

**DEFINITIONS:**

4301 Transfer – the emergency transfer of an inmate-patient from a non-satellite unit facility to a satellite unit Residential Crisis Treatment Program (RCTP) for further evaluation and at least temporary increased level of care per the provisions of DOCCS Directive 4301.

4301 Evaluation – the evaluation and increased level of care provided at an RCTP subsequent to an emergency transfer per the provisions of DOCCS Directive 4301.

**PROCEDURE:**

1.  Sending Facility - When an inmate-patient is evaluated by mental health staff and determined to require further evaluation in a satellite unit, DOCCS security staff will determine where the inmate-patient will be monitored awaiting transfer to an available RCTP observation cell.  The following procedure is then followed:

    A.  During normal business hours

        1)  OMH staff attempt by telephone to find an available RCTP observation cell at any of the three closest satellite units.  Should there be no available RCTP observation cells in any of those three satellite units, OMH staff telephone the

| *CORRECTIONS-BASED OPERATIONS MANUAL* | Date: 2/14/19 | Policy # 4.4 | Page: 2 of 6 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Subject: | **4301 Transfers** | |

DOCCS Director of Mental Health Services for assistance in finding the closest available RCTP observation cell.

2) Once an available RCTP observation cell is located, OMH staff contact the Unit Chief or designee of the identified satellite unit to request approval of the 4301 transfer.

3) Should the receiving Unit Chief not approve the 4301transfer, the CNYPC Director of Corrections-Based Operations and the CNYPC Corrections-Based Clinical Director are consulted to discuss the appropriate placement for the inmate-patient in crisis.

4) Upon approval of the 4301 transfer by the receiving Unit Chief or designee, OMH staff at the sending facility make the following arrangements:

   a) The facility Inmate Records Coordinator (IRC) is notified of the need to transfer the inmate-patient per the provisions of DOCCS Directive 4301. The IRC then notifies DOCCS Medical and Guidance Unit staff of the need to collect the inmate-patient's records for transfer to the receiving satellite unit.

   b) The facility Watch Commander is notified of the need to arrange transportation for the inmate-patient to the satellite unit facility.

   c) UCR Documentation is completed as described in policy 9.3, "Documentation Requirements for Active Transfers".

   d) Required transfer information is provided to the receiving unit as described in policy 7.2, "Active Transfers".

   e) The inmate-patient's mental health record is delivered to the IRC office to be packed with the DOCCS Medical and Guidance records for transport with the inmate-patient to the receiving facility.

   f) Designated staff complete the required fields under the General, Admit and Transfer tabs in the CNYPC Net Corrections-Based Operations Program (CNet-CBO).

| *CORRECTIONS-BASED OPERATIONS MANUAL* | Date: 2/14/19 | Policy # 4.4 | Page: 3 of 6 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Subject: **4301 Transfers** | | |

B. During evening and weekend shifts at Satellite Unit facilities

1) OMH Nursing staff inform the Watch Commander of the need to locate an available RCTP Observation Cell.  The Watch Commander then works with the DOCCS Command Center to determine the most appropriate satellite facility.

2) OMH Nursing staff documents the reason for the RCTP transfer in a Progress Note and include the note with any other OMH records to be sent with the inmate-patient to the receiving facility.

3) OMH Nursing staff fax copies of the Progress Note, any current Physician's Order Forms and the Medication/Treatment Record to the receiving satellite unit. OMH Nursing staff at the receiving facility should telephone OMH Nursing staff at the sending facility if there any discrepancies between the physician's orders and Medication/Treatment Record.

4) During the next business day following the 4301 transfer, UCR documentation is completed as described in policy 9.3, "Documentation Requirements for Active Transfers", and the OMH record is sent to the receiving facility via UPS Overnight Mail.

5) During the next business day following the 4301 transfer, OMH staff complete the required fields under the General, Admit and Transfer tabs in the CNet-CBO Program.

C. During any shift when no OMH staff are on-site at Satellite Unit/Mental Health facilities

1) The Unit Chief will have in place with the Watch Commander a system by which the Unit Chief or designee is notified of any inmate-patient having been sent to another satellite unit for a 4301 evaluation during a shift when no OMH staff were on-site, e.g. between 10:00 PM and 6:00 AM.

2) OMH staff will provide the receiving facility with all required transfer information during the next shift that OMH staff are on-site.

a) If on a weekend or holiday shift, OMH nursing staff, once notified of the 4301 transfer, will document the reason for RCTP admission in a Progress Note and fax the note along with copies of the Medication/Treatment

| *CORRECTIONS-BASED OPERATIONS MANUAL* | Date: 2/14/19 | Policy # 4.4 | Page: 4 of 6 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Subject: | **4301 Transfers** | |

Record and Physician's Orders to the receiving facility.  OMH nursing staff will telephone and speak with OMH nursing staff at the receiving facility to verify that the fax has been received and to answer any questions from the receiving unit nurse.  The telephone contact with the receiving facility nursing staff is documented in the Nursing Log.

b) If on a normal workday shift, the inmate-patient's primary therapist or other designated staff will document the circumstances of the transfer in a Termination/Transfer Progress Note and fax the note along with copies of the Medication/Treatment Record and Physician's Orders to the receiving facility.  Designated staff will telephone and speak with OMH nursing staff at the receiving facility to verify that the fax has been received and to answer any questions from the receiving unit.

3) During the next business day following the 4301 transfer:

a) UCR Documentation is completed as described in policy 9.3, "Documentation Requirements for Active Transfers", and the OMH record is mailed to the receiving unit via UPS Overnight Mail.

b) Designated staff complete the required fields under the General, Admit and Transfer tabs in the CNet-CBO Program.

2. Receiving Facility – Note: If insufficient information regarding the reason for the 4301 referral is received from staff at the sending facility, OMH staff at the receiving facility must seek such information from the sending facility.

Upon completion of the 4301 evaluation, the receiving facility OMH staff follow the procedures below for each contingency:

A.  Inmate-patient cannot be returned to sending facility due to change in Mental Health Service Level or other circumstances:

Note:  If an inmate-patient's Mental Health Service Level is changed to MHSL 4 as a result of the 4301 evaluation, DOCCS Bureau of Mental Health Staff must be notified via e-mail of the level change in addition to OMH staff following the procedure outlined in 2B below.  The inmate-patent may be returned to his/her owning facility to await transfer to another facility as designated by DOCCS.  The inmate-patient's OMH record should remain at the evaluating satellite unit and subsequently be sent via overnight mail to the appropriate mental health unit

| *CORRECTIONS-BASED OPERATIONS MANUAL* | Date: 2/14/19 | Policy # 4.4 | Page: 5 of 6 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Subject: | **4301 Transfers** | |

once notified by DOCCS MH staff to which new owning facility the inmate-patient will be transferred.

1) OMH staff notify the IRC at their facility via DOCCS e-mail that the inmate-patient cannot be returned to the sending or owning facility and whether or not the inmate-patient can be housed in a General Population housing area of the receiving facility while awaiting the designation of and transfer to the alternative facility.

2) OMH staff notify the IRC, the Medical Nurse Administrator and the Senior Offender Rehabilitation Counselor at the inmate-patient's sending or owning facility that the inmate-patient cannot be returned to the owning facility and request that an Unscheduled Transfer Review be processed by the owning facility staff.

3) DOCCS staff at the sending and receiving facilities notify OMH staff of the transfer information and OMH staff make arrangements for the active transfer as described in CBO policy 7.2 "Active Transfers".

B. Inmate-patient can be returned to the sending facility:

1) OMH staff at the receiving facility notify the DOCCS IRC, Medical Nurse Administrator and Watch Commander at the sending facility via DOCCS e-mail that the inmate-patient's 4301 evaluation has been completed and request that transportation arrangements be made for the inmate-patient to be returned to the sending facility.

2) Should the sending facility fail to make arrangements to pick up the inmate-patient within 24 hours, the Unit Chief discusses the circumstances with the satellite facility Deputy Superintendent for Security and the DOCCS Director of Mental Health to insure the inmate-patient is returned to the sending facility as soon as possible.

3) OMH staff make arrangements for the active transfer as described in CBO policy 7.2 "Active Transfers".

| *CORRECTIONS-BASED OPERATIONS MANUAL* | Date: 2/14/19 | Policy # 4.4 | Page: 6 of 6 |
|---|---|---|---|
| **CRISIS INTERVENTION SERVICES** *-Continuation Page-* | Subject: | **4301 Transfers** | |

3. Follow-up Subsequent to 4301 Evaluation

All inmate-patients having been received in a facility following the completion of a 4301 policy will be seen by a primary therapist, nurse practitioner or psychiatrist at the time such clinical staff are next on-site on a regular business day.

**FORM(S):**
Chronological Record (410 MED CNYPC)
Physician's Orders 89 MED (F)
Medication / Treatment Record Form 223.1 MED (F) (MH) (3-01)
Termination Transfer Progress Note (420 MED CNYPC)

<u>Index Terms</u>:  4301, Transfer

| CENTRAL NEW YORK PSYCHIATRIC CENTER **_INPATIENT OPERATIONS MANUAL_** **PROVISION OF CARE** | Date: 11/9/15 | Policy #  3.8 |
|---|---|---|
| | Supercedes: 5/17/11 | Page (s): 1 of 3 |
| Prepared by: Steve Gross, PsyD, Chief Psychologist Nichole Marioni, PhD, Chief Psychologist | Policy: **Comprehensive Suicide Risk Assessment Process** | |
| Approved By: Cabinet Medical Staff Executive Committee | | |

**POLICY:**

Documented data demonstrates that suicide risk exists within the forensic population.  Therefore, CNYPC clinicians complete the ongoing process of Comprehensive Suicide Risk Assessment to ensure patient/resident safety and timely interventions and to maximize positive patient/resident outcomes. Upon entry into Reception, all inmates are assessed for suicide risk by OMH clinicians utilizing the Suicide Prevention Screening Guidelines and CNYPC Brief Mental Health Assessment.  If an inmate is admitted to services, the clinician assesses and documents acute and chronic risk factors and protective factors, notes the presence or absence of warning signs (IS PATH WARM) of imminent suicide risk, and documents a plan of action to address any suicide risk identified.  Results and recommendations from the suicide risk assessment are taken into consideration when developing and updating the treatment plan and in making the decision regarding whether to admit to a higher level of care.

**REFERENCES:**     The Joint Commission National Patient Safety Goal #15
IS PATH WARM mnemonic (American Association of Suicidology, www.suicidology.org)
HOT FLAGS mnemonic for prison-based risk factors for imminent suicide risk

**DEFINITIONS:**     **Warning Signs** – indicators of imminent suicidal behavior, summarized by the mnemonic **IS PATH WARM:**

| | | |
|---|---|---|
| **I** | = | Ideation - Threats, talk about death, dying, suicide |
| **S** | = | Substance Abuse - Increased use of alcohol, of drugs |
| **P** | = | Purposeless - Feeling like a failure, burden, no reasons for living |
| **A** | = | Anxiety - Agitation, restlessness, unable to sleep |
| **T** | = | Trapped - No options, no way out |
| **H** | = | Hopelessness - Defeated, no value to anyone, nobody cares |
| **W** | = | Withdrawal - From friends, family, sleeping all the time |
| **A** | = | Anger - Irritable, enraged, seeking revenge |
| **R** | = | Recklessness - Impulsive, risky activities |
| **M** | = | Mood Changes - Depressed, preoccupied, agitated, sudden calm |

**Prison-based suicide risk factors derived from review of CNYPC suicide attempts and completions:**

| | | |
|---|---|---|
| **H** | = | Harassment/Threats - Real or perceived |
| **O** | = | Overwhelmed by Prison |
| **T** | = | Transfer – Pending or recent |
| **F** | = | Family Estrangement |
| **L** | = | Lost Relationship |
| **A** | = | Appeal/Parole/Court Hearing |
| **G** | = | Gang Threats |
| **S** | = | Sanctions – Tickets/SHU/loss of privileges |

| CENTRAL NEW YORK PSYCHIATRIC CENTER | Date: 11/9/15 | Policy #: 3.8 | Page: 2 of 3 |
|---|---|---|---|
| **PROVISION OF CARE**<br>*-Continuation Page-* | Policy:<br><br>**Comprehensive Suicide Risk Assessment Process** | | |

**PROCEDURE:**

The Comprehensive Suicide Risk Assessment (CSRA) process begins at the time an OMH clinician screens an inmate or admits a patient/resident to services. Suicide risk assessment is an on-going process from admission to discharge.

**A. Screening/Admission**

- The MD/NPP documents suicide risk, including presence or absence of warning signs and treatment recommendations, in the Suicide Risk Assessment Shell of the Screening Admission Note: Previous Comprehensive Suicide Risk Assessment (CSRA) Forms should be reviewed.
- The Primary Therapist completes a CSRA Form within 5 days of admission utilizing the initial suicide risk assessment on the Screening Admission Note, prior records as available including previous CSRA Forms and PSYCKES report, and patient/resident interview.

**B. Treatment Plan/Individual Service Plan**

- At the time the Treatment Plan (Inpatient) or Individual Service Plan (ISP; SOTP) is developed, the CSRA Form is reviewed for chronic and acute risk factors and protective factors. Treatment recommendations are documented on the Treatment Plan/ISP.
- If the patient/resident is at risk for suicide, this problem should be listed and incorporated into the Treatment Plan/ISP with goals, objectives and methods to include addressing dynamic risk factors and increasing protective factors to reduce overall suicide risk.
- The CSRA Form will be reviewed at each Treatment Plan Review (TPR)/Individual Service Plan-Review (ISP-R). The review will be documented in the TPR/ISP-R, identifying any changes to suicide risk and related updates to treatment goals, objectives and methods, as indicated.

**C. Progress Notes**

**Primary Therapist**
- Suicide risk will be addressed within the "Suicide Risk Assessment" section of each Progress Note, including changes in risk or protective factors, discussion of warning signs, assessment of patient/resident's current functioning, and description of suicide risk-related treatment plan.

**Psychiatrist/ Nurse Practitioner**
- Suicide risk, any changes to the risk factors, protective factors and warning signs, and review of the CSRA Form will be documented in the structured Psychiatric Progress Note.

| CENTRAL NEW YORK PSYCHIATRIC CENTER | Date: 11/9/15 | Policy #: 3.8 | Page: 3 of 3 |
|---|---|---|---|
| **PROVISION OF CARE**<br>*-Continuation Page-* | Policy:<br>**Comprehensive Suicide Risk Assessment Process** | | |

**D. Discharge/Transfer**

- An assessment of the patient/resident's suicide risk is included in the Discharge Summary, during presentation to the Discharge Committee, in the Patient Care Monitoring (PCM) Form, and during the PCM conference.

- A copy of the most recent CSRA Form is forwarded to the receiving unit with the Discharge Summary and PCM Form.

**E.  Updates**

- A new CSRA Form should be completed at the following times:
    - <u>As clinically indicated</u>, that is, when significant changes occur relevant to suicide risk (e.g., new or strengthened risk factors such as disciplinary sanctions, different type or severity of self-harm, suicide attempt; loss of protective factors such as termination of relationship), or to a patient/resident's Treatment Plan/ISP goal related to suicide (including the closing/discontinuing of a goal).
    - <u>Upon discharge</u>

**<u>FORM(S):</u>**
<u>Screening Admission Note Psychiatric Evaluation Part I (MHARS)</u>
<u>Comprehensive Suicide Risk Assessment Form (MED CNY 486)</u>
<u>Treatment Plan (MHARS)</u>
<u>Treatment Plan Review (MHARS)</u>
<u>Individual Service Plan (MHARS)</u>
Individual Service Plan Review (MHARS)
<u>Primary Therapist Progress Note Form (MED CNY 349 / MHARS)</u>
<u>Psychiatric Progress Note (MED CNY 356 / MHARS)</u>
<u>Patient Care Monitoring – Inpatient (MED CNY 430)</u>
<u>Discharge Summary / Service Plan Part All (MHARS)</u>

<u>Index Terms</u>:  Suicide Risk, Suicide Assessment, CSRA